1  DAVID B. FARKAS (SBN 257137)
2  david.farkas@us.dlapiper.com
   DLA PIPER LLP (US)
3  2000 Avenue of the Stars
   Suite 400 North Tower
4  Los Angeles, California 90067-4704
5  Tel: (310) 595-3000
   Fax: (310) 595-3300
6
7  JEFFREY S. TOROSIAN (*Pro Hac Vice*)
8  jeffrey.torosian@dlapiper.com
   DLA PIPER LLP (US)
9  444 West Lake Street, Suite 900
   Chicago, Illinois 60606-0089
10 Tel: (312) 368-4000
11 Fax: (312) 236-7516
12
   Attorneys for Plaintiffs ZETTA JET PTE.
13 LTD., and ZETTA JET USA, INC.

14          **UNITED STATES DISTRICT COURT**
15          **CENTRAL DISTRICT OF CALIFORNIA**
16

17 JAMES N.H. SEAGRIM, STEPHEN          CASE NO. 2:17-CV-6648 (JAK)
   MATTHEW WALTER, ZETTA JET
18 PTE. LTD., and ZETTA JET USA, INC.,  The Honorable John A. Kronstadt
19              Plaintiffs,             **NOTICE OF MOTION AND**
                                        **MEMORANDUM OF POINTS**
20         vs.                          **AND AUTHORITIES IN**
                                        **SUPPORT OF PLAINTIFFS'**
21 GEOFFERY OWEN CASSIDY,               **MOTION FOR DEFAULT**
   MIRANDA JUNE TANG (a/k/a JUNE        **JUDGMENT AGAINST**
22 TANG KIM CHOO), and ASIA             **DEFENDANT GEOFFREY OWEN**
   AVIATION HOLDINGS PTE. LTD.,         **CASSIDY**
23
                Defendants.
24                                      **DATE:** June 14, 2021
25                                      **TIME:** 8:30 a.m.
                                        **COURTROOM:** 10B
26
27
28

DLA PIPER LLP (US)
LOS ANGELES

TO THE HONORABLE COURT AND TO ALL PARTIES:

PLEASE TAKE NOTICE that on June 14, 2021 at 8:30 a.m.  this matter will be heard in the above entitled Court located at 350 West 1st Street, Los Angeles, CA, 90012, or heard remotely if so required, and the Trustee will move this Court to grant entry of default judgment against Defendant Geoffrey Owen Cassidy.

The Motion is based on this Notice and Memorandum of Points and Authorities in Support of the Motion for Entry of Default Judgment Against Defendant Geoffrey Owen Cassidy; the Declaration of Jonathan D. King in support of this Motion; the Declaration of Luke Furler in support of this Motion; and the [Proposed] Order Granting Entry of Default Judgment Pursuant to FRCP 55(b); as well as any oral and documentary evidence as may be allowed at the hearing of this Motion.


DATED: February 19, 2021          **DLA PIPER LLP (US)**

By: /s/ David B. Farkas
DAVID B. FARKAS
JOHN K. LYONS (*Pro Hac Vice*)
JEFFREY S. TOROSIAN (*Pro Hac Vice*)

Attorneys for Jonathan D. King as
Chapter 7 Trustee

DLA Piper LLP (US)
Los Angeles

2

# TABLE OF CONTENTS

I.     BACKGROUND, FACTS, AND PROCEDURAL HISTORY ....................1

II.    JURISDICTION AND VENUE.......................................................................2

III.   LEGAL STANDARD .........................................................................................4

IV.    PLAINTIFFS HAVE MET THE PROCEDURAL REQUIREMENTS .......6

V.     PLAINTIFFS HAVE SATISFIED THE *EITEL* FACTORS.........................7

       A.    Denial of Default Judgment Would Prejudice Plaintiffs ....................7

       B.    Plaintiffs' Substantive Claims are Meritorious and the
             Complaint Sufficiently Pleads the Claims .........................................7

             i.     RICO (First Cause of Action)....................................................7

             ii.    Intentional Misrepresentation (Second Cause of Action) ........9

             iii.   Concealment (Third Cause of Action)......................................10

             iv.    False Promises (Fourth Cause of Action)................................10

             v.     Conversion, Breaches of Fiduciary Duty, Abuses of
                    Control, Corporate Waste, and Unjust Enrichment (Fifth-
                    Ninth Causes of Action) .........................................................11

       C.    The Monetary Judgment Sought Is Proportionate to the Harm
             Defendant Caused .............................................................................11

       D.    The Material Facts of this Matter Are Indisputable..........................12

       E.    More than Mere Lack of Excusable Neglect, Cassidy Acted
             Willfully and in Bad Faith .................................................................13

       F.    The General Policy Favoring Decisions on the Merits Does
             Not Weigh Against Entering Default Judgment Here .......................13

VI.    THE DAMAGES SOUGHT ARE REASONABLE, APPROPRIATE,
       AND SUPPORTED BY THE EVIDENCE. .................................................13

VII.   CONCLUSION ................................................................................................17

ii

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re Asyst Techs., Inc. Derivative Litig.*,
2008 WL 2169021 (N.D. Cal. May 23, 2008) .................................................... 11

*Bd. of Trs. of the Boilermaker Vacation Tr. v. Skelly, Inc.*,
389 F. Supp. 2d 1222 (N.D. Cal. 2005) ............................................................. 5

*Beckwith v. Dahl*,
205 Cal. App. 4th 1039 (2012) ........................................................................ 11

*Celotex Corp. v. Edwards*,
514 U.S. 300 (1995) ........................................................................................ 3

*Coleman v. Dish Network LLC*,
2017 WL 6888289 (C.D. Cal. Nov. 22, 2017) .................................................. 3

*Daniels v. Select Portfolio Servicing, Inc.*,
246 Cal. App. 4th 1150 (2016) ....................................................................... 10

*Davis v. Fendler*,
650 F.2d 1154 (9th Cir. 1981) ......................................................................... 5

*Ditullio v. Boehm*,
662 F.3d 1091 (9th Cir. 2011) ....................................................................... 16

*Eitel v. McCool*,
782 F.2d 1470 (9th Cir. 1986) ...........................................................5, 7, 12, 13

*Erickson v. Pardus*,
551 U.S. 89 (2007) ........................................................................................ 11

*F.T.C. v. Hope for Car Owners, LLC*,
2013 WL 322895 (E.D. Cal. Jan. 24, 2013) ................................................... 13

*FTC v. A to Z Mktg., Inc.*,
2014 WL 12597436 (C.D. Cal. Sep. 2, 2014) ................................................... 7

*Geddes v. United Fin. Grp.*,
559 F.2d 557 (9th Cir. 1977) ......................................................................... 12

*Gutierrez v. Girardi*,
194 Cal. App. 4th 925 (2011) ......................................................................... 11

*Jackson v. E-Z-GO Div. of Textron, Inc.*,
2012 WL 2562830 (W.D. Ky. June 29, 2012) ............................................... 1, 4

*Kloepping v. Fireman's Fund*,
1996 WL 75314 (N.D. Cal. Feb. 13, 1996) .................................................7, 13

*Landstar Ranger, Inc. v. Parth Enterprises, Inc.,*
  725 F. Supp. 2d 916 (C.D. Cal. 2010) ................................................................ 6, 11

*In re Late Fee & Over-Limit Fee Litig.,*
  741 F.3d 1022 (9th Cir. 2014) ............................................................................ 16

*Living Designs, Inc. v. E.I. Dupont de Nemours & Co.,*
  431 F.3d 353 (9th Cir. 2005) .................................................................................. 7

*Lovejoy v. AT&T Corp.,*
  119 Cal. App. 4th 151 (2004) ............................................................................... 10

*Microsoft Corp. v. Nop,*
  549 F. Supp. 2d 1233 (E.D. Cal. 2008) .................................................................. 7

*Navarro Sav. Ass'n v. Lee,*
  446 U.S. 458 (1980) ................................................................................................ 4

*NewGen, LLC v. Safe Cig, LLC,*
  840 F.3d 606 (9th Cir. 2016) .................................................................................. 5

*Pepsico, Inc. v. Cal. Sec. Cans,*
  238 F. Supp. 2d 1172 (C.D. Cal. 2002) ..........................................................*passim*

*Phillip Morris USA, Inc. v. Castworld Prods., Inc.,*
  219 F.R.D. 494 (C.D. Cal. 2003) ........................................................................... 5

*Riggs v. Aetna Life Ins. Co.,*
  188 F. App'x 659 (10th Cir. 2006) ......................................................................... 4

*Ritz Camera & Image, LLC v. Sandisk Corp.,*
  2013 WL 3387817 (N.D. Cal. July 5, 2013) ...................................................... 1, 4

*Samson v. Allis-Chalmers Prod. Liab. Tr.,*
  1990 WL 87394 (E.D. Pa. June 21, 1990) .............................................................. 4

*Shanghai Automation Instrument Co. v. Kuei,*
  194 F. Supp. 2d 995 (N.D. Cal. 2001) ................................................................. 11

*SIPC v. Vigman,*
  764 F.2d 1309 (9th Cir. 1985) ................................................................................ 3

*Swingless Golf Club Corp. v. Taylor,*
  679 F. Supp. 2d 1060 (N.D. Cal. 2009) ............................................................... 11

*Televideo Sys., Inc. v. Heidenthal,*
  826 F.2d 915 (9th Cir. 1987) .................................................................................. 5

*United Food Grp., LLC v. Cargill, Inc.,*
  2015 WL 13868996 (C.D. Cal. June 8, 2015) ........................................................ 3

*United Mine Workers of Am. v. Gibbs,*
  383 U.S. 715 (1966) ................................................................................................ 3

**Statutes**

11 U.S.C. § 541(a)(1) ............................................................................... 3

18 U.S.C. § 1962 ..................................................................................... 15

18 U.S.C. § 1962(c) ............................................................................... 7, 8

18 U.S.C. § 1964(c) ......................................................................... 8, 15, 16

18 U.S.C. § 2314 ....................................................................................... 9

28 U.S.C. § 1331 ....................................................................................... 3

28 U.S.C. § 1332(a)(2) ............................................................................... 4

28 U.S.C § 1332(a)(3) ................................................................................ 4

28 U.S.C. § 1334(b) ............................................................................... 3, 4

28 U.S.C. § 1367(a) ................................................................................... 3

28 U.S.C. § 1367(c) ................................................................................... 3

Racketeer Influenced and Corrupt Organizations Act,
    18 U.S.C. § 1961 *et seq.* .................................................................*passim*

Servicemembers Civil Relief Act,
    50 U.S.C. § 3901 *et seq.* .................................................................... 5, 6

**Other Authorities**

Fed. R. Civ. P. 8(b)(6) ............................................................................... 5

Fed. R. Civ. P. 37(b)(2)(A)(i) ............................................................. 5, 6, 13

Fed. R. Civ. P. 54(c) ................................................................................. 6

Fed. R. of Civ. P. 55 ................................................................................. 4

Fed. R. of Civ. P. 55(b)(2) ......................................................................... 5

Local Rule 55-1 .................................................................................... 4, 6

Local Rule 55-3 ...................................................................................... 16

Restatement (Second) of Torts § 908 (1979) .............................................. 16

1    For the reasons described below, Plaintiffs[1] move this Court to enter default
2    judgment against Defendant Geoffrey Owen Cassidy ("Cassidy").

3    ## I. Background, Facts, and Procedural History

4    Cassidy—as part of an agreed scheme and enterprise with his ex-wife, Tang,
5    and their company, Asia Aviation—pillaged Zetta Jet USA and Zetta Jet PTE through
6    a scheme of fraud, self-dealing, and theft. Cassidy (1) stole millions in corporate
7    funds, (2) destroyed the Plaintiff corporations by buying hundreds of millions of
8    dollars of aircraft at inflated prices in exchange for kickbacks, and (3) fraudulently
9    concealed or misrepresented material information to enrich himself. (Compl. ¶¶ 41-
10   50, 53-55, 58, 62-70.) Cassidy stole Zetta PTE's funds to buy luxury yachts, real
11   property in France and Singapore, and expensive cars. (*Id.* ¶¶ 41-43.) He threw
12   "extravagant gatherings" in Monaco, Los Angeles, and Macao with misappropriated
13   funds. (*Id.* ¶ 44.) Cassidy also used Zetta PTE aircraft for personal use without the
14   required authorization from the board of directors and without ever providing
15   reimbursement. (*Id.* ¶ 45-50.)

16   While Cassidy was siphoning millions from Plaintiffs, he was also running
17   them into the ground. He destroyed Zetta PTE and Zetta USA by causing them to buy
18   hundreds of millions of dollars of aircraft at inflated prices in exchange for kickbacks.

---

20   [1] The original plaintiffs in the Complaint were James N.H. Seagrim ("Seagrim"), Stephen Matthew
21   Walter ("Walter"), Zetta Jet PTE. Ltd. ("Zetta PTE"), and Zetta Jet USA, Inc. ("Zetta USA").
     (Compl. at 1.) On April 26, 2018, the Trustee confirmed that he was pursuing claims on behalf of
22   Zetta PTE and Zetta USA. (Dkt. 55.) This Court recognized that this statement was "sufficient to
     effect a ratification, joinder or substitution in this action" (Dkt. 56 at 6) and that the Trustee thus
23   "be[came] the real party in interest" (*id.* quoting *Ritz Camera & Image, LLC v. Sandisk Corp.*, 2013
     WL 3387817, at *2 (N.D. Cal. July 5, 2013)). If Zetta PTE and Zetta USA are still plaintiffs in this
24   case, therefore, they are merely nominal plaintiffs. *See Jackson v. E-Z-GO Div. of Textron, Inc.*,
     2012 WL 2562830, at *1–2 (W.D. Ky. June 29, 2012). Seagrim and Walter were dismissed from
25   this action on October 5, 2018. (Dkt. 62; *see also* Dkt. 60.) The original Defendants were Cassidy,
     Miranda June Tang ("Tang"), and Asia Aviation Holdings PTE. Ltd. ("Asia Aviation"). (Compl. at
26   1.) Tang was voluntarily dismissed on October 22, 2017. (Dkt. 19.) Asia Aviation was dismissed
     for lack of personal jurisdiction on August 2, 2018. (Dkt. 56 at 10.) As a result, the only parties
27   remaining are the Trustee (as the real party in interest and plaintiff), Zetta PTE and Zetta USA (as
28   nominal plaintiffs and, with the Trustee, "Plaintiffs"), and Cassidy (as defendant).

1   (*Id.* ¶¶ 51-56.) Cassidy accepted over a million dollars in kickbacks and bribes, which
2   he concealed from the board of directors. (*Id.* ¶ 54-55.) Cassidy not only fraudulently
3   concealed information, he also outright lied to enrich himself, including to gain shares
4   in the Plaintiff corporations. (*Id.* ¶¶ 62-66.)

5        Cassidy's tortious and illegal conduct was part of an agreed scheme and
6   enterprise with Tang and their company, Asia Aviation. (*Id.* ¶¶ 57, 63, 66, 77-81, 85,
7   93-94, 96-97, 99, 116, 119, 122, 130, 132, 145.)

8        Plaintiffs thus filed the Complaint in this action. (Dkt. 1.) The Complaint
9   advances nine causes of action: (i) RICO violations; (ii) intentional
10  misrepresentations or fraud; (iii) concealment; (iv) false promises; (v) conversion; (vi)
11  breaches of fiduciary duty; (vii) abuses of control; (viii) corporate waste; and (ix)
12  unjust enrichment. Cassidy was personally served with the summons, Complaint, and
13  related documents on September 23, 2017. (Dkt. 12.)

14       Cassidy moved to dismiss for lack of personal jurisdiction, *forum non*
15  *conveniens*, and lack of standing. (Dkt. 23.) The Court found that it had specific
16  personal jurisdiction over Cassidy and so denied the motion. (Dkt. 56.) Cassidy
17  answered on September 14, 2018. (Dkt. 59.)

18       Cassidy then "failed to participate in discovery or any other aspect of the
19  proceedings." (Dkt. 126 at 4; *see also* Dkt. 99-1 at 2-7 (detailing Cassidy's bad-faith
20  refusals to participate in these proceedings).) The Court thus ordered that Cassidy's
21  answer be stricken and default be entered against him. (*Id.*) The Court also directed
22  Plaintiffs to file a motion for default judgment on or before January 29, 2001. (*Id.*)
23  The Clerk entered default against Cassidy on January 11, 2021. (Dkt. 127.)

24       Plaintiffs now move for entry of default judgment against Cassidy.

25  **II. Jurisdiction and Venue**

26       This Court has specific personal jurisdiction over Cassidy. (*See* Dkt. 56 at 7-
27  17.) This Court has already held that the Complaint sufficiently alleged that Cassidy
28  (1) purposefully availed himself of the privilege of conducting activities in California

1  and invoked the benefits and protections of its laws, (2) the claims either arise out of,
2  or result from, or are pendent with Cassidy's California-related activities, and (3) the
3  exercise of jurisdiction is reasonable. (*Id.* at 10-17.)

4      This Court has three independent bases for subject-matter jurisdiction. First,
5  this Court has federal question jurisdiction under 28 U.S.C. § 1331 because Cassidy's
6  alleged and admitted conduct establishes a federal claim under the Racketeer
7  Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1961 *et seq.*
8  (Compl. ¶ 15.) "A claim based on a violation of a federal statute is a claim arising
9  under federal law within the meaning of 28 U.S.C. § 1331." *SIPC v. Vigman*, 764
10  F.2d 1309, 1314 (9th Cir. 1985) (cleaned up).[2]

11      Second, this Court has federal question jurisdiction under 28 U.S.C. § 1334(b)
12  because this action is related to a case under the bankruptcy code. *See United Food*
13  *Grp., LLC v. Cargill, Inc.*, 2015 WL 13868996, at *7 (C.D. Cal. June 8, 2015). Section
14  1334(b) provides that "the district courts shall have original . . . jurisdiction of all civil
15  proceedings . . . related to cases under title 11." The Supreme Court has held that
16  "[p]roceedings 'related to' the bankruptcy include . . . cause[s] of action owned by the
17  debtor which become property of the estate pursuant to 11 U.S.C. § 541(a)(1)." *Id.*
18  (quoting *Celotex Corp. v. Edwards*, 514 U.S. 300, 307-08 n.5 (1995)). Here, this
19  Court has already found that "the claims advanced by Zetta PTE and Zetta USA are

20

21

22

23  [2] This Court has supplemental jurisdiction over the other claims under 28 U.S.C. § 1367(a) because those claims are so related to the federal claim that they form part of the same case or controversy. *See Coleman v. Dish Network LLC*, 2017 WL 6888289, at *2 (C.D. Cal. Nov. 22, 2017).
24  Supplemental jurisdiction is appropriate here because the "state and federal claims . . . derive from a common nucleus of operative fact." *Id.* (quoting *United Mine Workers of Am. V. Gibbs*, 383 U.S.
25  715, 725 (1966)). This Court has already recognized that all causes of action in the Complaint share a common nucleus of operative fact. (Dkt. 56 at 13 n.5.) Nor is there any reason for this Court to
26  decline to exercise supplemental jurisdiction because (1) the state claims do not raise any novel or complex issue of state law, (2) the state claims do not substantially predominate over the federal
27  claim, (3) this court has not dismissed the federal claim, and (4) there is no other compelling reason for declining jurisdiction. *See* 28 U.S.C. § 1367(c); *see also Coleman*, 2017 WL 6888289, at *3, 5.
28

1    assets of their respective bankruptcy estates[.]" (Dkt. 56 at 6.) As a result, there is

2    federal question jurisdiction under § 1334(b).

3          Independent from federal question jurisdiction, the Complaint alleges diversity

4    jurisdiction under 28 U.S.C § 1332(a)(3). (Compl. ¶ 17; *see also* Dkt. 56 at 22 (this

5    Court applying the rules of a "federal court in a diversity action" to this case).)[3]

6          Venue is proper in this Court because some of Cassidy's illegal conduct

7    occurred in Los Angeles County and Cassidy's illegal conduct economically disabled

8    Plaintiff Zetta Jet USA, Inc., including the air charter operation in Los Angeles

9    County. (Compl. ¶ 18.)

10   **III. Legal Standard**

11         Before a court may rule on a motion for default judgment, it first must

12   determine whether the motion complies with Federal Rule of Civil Procedure 55 and

13   Local Rule 55-1. *See Pepsico, Inc. v. Cal. Sec. Cans*, 238 F. Supp. 2d 1172, 1175

14   (C.D. Cal. 2002). Under those rules, the motion must set forth: (1) when and against

15   which party the default was entered; (2) the identification of the pleading to which

16

17   ───────────────────────

18   [3] Alternatively, this Court has diversity jurisdiction under 28 U.S.C. § 1332(a)(2), which allows for
     diversity jurisdiction between "citizens of a State and citizens or subjects of a foreign state[.]" 28
     U.S.C. § 1332(a)(2). When evaluating parties' citizenship, "a federal court must disregard nominal
19   or formal parties and rest jurisdiction only upon the citizenship of real parties to the controversy."
     *Navarro Sav. Ass'n v. Lee*, 446 U.S. 458, 461 (1980). Zetta PTE and Zetta USA became nominal
20   parties upon their bankruptcy discharge. *See Jackson v. E-Z-GO Div. of Textron, Inc.*, 2012 WL
     2562830, at *1–2 (W.D. Ky. June 29, 2012) (holding that any non-diverse parties became nominal
21   parties upon bankruptcy discharge and so diversity jurisdiction was preserved). The Trustee then
     became the real party in interest here. *See Riggs v. Aetna Life Ins. Co.*, 188 F. App'x 659, 663 (10th
22   Cir. 2006); *see also Ritz Camera*, 2013 WL 3387817, at *2. This Court has recognized just that. It
     held, for example, that "this action can only be prosecuted by the Trustee," that Zetta PTE and Zetta
23   USA "do not have standing to pursue this action," and that "the Trustee is the real party in interest."
     (Dkt. 56 at 6; *see also* Dkt. 55 at 3; Doc 55-1 at 3 n.2.) This Court thus may consider the citizenship
24   of the Trustee rather than the citizenship of the bankrupt corporations for diversity jurisdiction
     purposes. *See, e.g.*, *Samson v. Allis-Chalmers Prod. Liab. Tr.*, 1990 WL 87394, at *2 (E.D. Pa. June
25   21, 1990) (rejecting the argument that "the citizenship of the bankrupt, rather than that of the trustee
     in bankruptcy, was determinative for purposes of diversity jurisdiction"). The Trustee is an Illinois
26   citizen. (Declaration of Chapter 7 Trustee Jonathan D. King ("King Decl."), attached hereto, ¶ 3.)
     Cassidy is a subject of a foreign state (Cassidy is an Australian citizen domiciled in Singapore).
27   (Dkt. 23-2 ¶¶ 1-2.) This Court thus also has diversity jurisdiction under 28 U.S.C. § 1332(a)(2).

28

1   default was entered; (3) whether the defaulting party is an infant or incompetent
2   person, and if so, whether that person is adequately represented; (4) that the
3   Servicemembers Civil Relief Act, 50 U.S.C. § 3901 *et seq.*, does not apply; and (5)
4   that notice of the motion has been served on the defaulting party, if required." *Id.*
5   Under Federal Rule of Civil Procedure 55(b)(2), "[i]f the party against whom a default
6   judgment is sought has appeared personally or by a representative, that party or its
7   representative must be served with written notice of the application at least 7 days
8   before the hearing."

9   Once those procedural requirements are met, "[g]ranting or denying a motion
10  for default judgment is a matter within the court's discretion." *Id.* at 919. In exercising
11  that discretion, the Ninth Circuit has ordered courts to consider (1) the possibility of
12  prejudice to the plaintiff; (2) the merits of the plaintiff's substantive claim; (3) the
13  sufficiency of the complaint; (4) the sum of money at stake in the action;(5) the
14  possibility of a dispute about material facts; (6) whether the default was due to
15  excusable neglect; and (7) the strong policy underlying the Federal Rules of Civil
16  Procedure favoring decisions on the merits. *Eitel v. McCool*, 782 F.2d 1470, 1471-72
17  (9th Cir. 1986); *see also NewGen, LLC v. Safe Cig, LLC*, 840 F.3d 606, 616 (9th Cir.
18  2016). A formal hearing is not required for a district court to render a default
19  judgment. *Bd. of Trs. of the Boilermaker Vacation Tr. v. Skelly, Inc.*, 389 F. Supp. 2d
20  1222, 1225 (N.D. Cal. 2005) (citing *Davis v. Fendler*, 650 F.2d 1154, 1164 (9th Cir.
21  1981)).

22  On entry of default, the well-pled allegations of the complaint, except those on
23  damages, are deemed true. Fed. R. Civ. P. 8(b)(6); *see also Phillip Morris USA, Inc.
24  v. Castworld Prods., Inc.*, 219 F.R.D. 494, 498 (C.D. Cal. 2003) (citing *Televideo
25  Sys., Inc. v. Heidenthal*, 826 F.2d 915, 917 (9th Cir. 1987)). In addition, this Court has
26  ordered that, "[p]ursuant to Fed. R. Civ. P. 37(b)(2)(A)(i), the matters within the scope
27  of the discovery propounded on Cassidy seeking his position and evidence as to
28  various issues . . . are deemed admitted in a manner that is adverse to him." (Dkt. 126

DLA Piper LLP (US)
Los Angeles

at 4.) The Court specifically referenced Plaintiffs' interrogatories (Dkt. 107-1 at 15), requests for production (*id.* at 29), and requests for admission (*id.* at 58). As described in Rule 37(b)(2)(A)(i), this Court thus "direct[ed] that the matters embraced in [its] order [and] the other [facts it] designated . . . be taken as established for purposes of [this] action, as the [Plaintiffs] claim[ ]."

A plaintiff must merely state a claim "upon which the [plaintiff] may recover." *PepsiCo*, 238 F. Supp. 2d at 1175. The court thus considers whether the "unchallenged facts constitute a legitimate cause of action, since a party in default does not admit mere conclusions of law." *Landstar*, 725 F. Supp. 2d at 920. The plaintiff must also provide evidence of its damages, and the damages sought must not be different in kind or exceed the amount demanded in the pleadings. Fed. R. Civ. P. 54(c).

## IV. Plaintiffs Have Met the Procedural Requirements

Plaintiffs have met the requirements for default judgment under Local Rule 55-1. This Court ordered Cassidy's answer stricken and directed "the clerk to enter default against Cassidy." (Dkt. 126 at 4.) The Clerk entered default against Cassidy on January 11, 2021. (Dkt. 127.) The pleading to which default was entered is the Complaint. Cassidy is neither an infant nor an incompetent person. (King Decl. ¶ 8.) Cassidy is not exempt under the Servicemembers Civil Relief Act, 50 U.S.C. § 3901 *et seq.* (*Id.* ¶ 9.) Plaintiffs have served a copy of this Motion on Cassidy concurrent with its filing. (*Id.* ¶ 10.) Consistent with this Court's previous order, Plaintiffs served this Motion on Cassidy by email.[4] (Dkt. 103; *see also* King Decl. ¶ 10.) Plaintiffs also sent copies to Cassidy's last known address. (*Id.*) On top of that, Plaintiffs served Cassidy's prior representatives, who previously confirmed that they have his contact information. (*Id.*; Dkt. 48-3 ¶ 3; Dkt. 67 at 1, 3; Dkt. 68 ¶ 3.) Plaintiffs have thus properly served notice of this Motion.

---

[4] Cassidy provided the following email to this court: g.o.cassidy@gmail.com. (Dkt. 84-1 at 1.) Plaintiffs' counsel has corresponded with Cassidy at that email address. (*See, e.g.*, Dkt. 96 at 11.)

**V. Plaintiffs Have Satisfied the *Eitel* Factors**

Plaintiffs have satisfied the seven factors that courts consider when determining whether default judgment should be granted. *Eitel*, 782 F.2d at 1471-72.

**A.      Denial of Default Judgment Would Prejudice Plaintiffs**

Denying default judgment here would leave Plaintiffs with no means to recover the damages sustained by Cassidy's wrongful conduct. *See Microsoft Corp. v. Nop*, 549 F. Supp. 2d 1233, 1236-37 (E.D. Cal. 2008). It would also mean that Plaintiffs would need to continue to commit time and resources to proceedings in which Cassidy has refused to participate. *See FTC v. A to Z Mktg., Inc.*, 2014 WL 12597436, at *3 (C.D. Cal. Sep. 2, 2014) (where defaulting defendants had not filed answers or otherwise participated in litigation, plaintiff would be prejudiced if required to keep litigating against "phantom defendants").

**B.      Plaintiffs' Substantive Claims are Meritorious and the Complaint Sufficiently Pleads the Claims**

The second and third *Eitel* factors are often analyzed together. The Ninth Circuit has "suggested that these two factors require that a plaintiff 'state a claim on which [it] may recover'" *Pepsico*, 238 F. Supp. 2d at 1175 (quoting *Kloepping v. Fireman's Fund*, 1996 WL 75314, at *2 (N.D. Cal. Feb. 13, 1996)). Plaintiffs have stated a claim on which they may recover for each cause of action.

*i. RICO (First Cause of Action)*

RICO makes it "unlawful for any person employed by or associated with any enterprise engaged in, or other activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity." 18 U.S.C. § 1962(c). The elements of a RICO claim are thus "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity (known as predicate acts) (5) causing injury to plaintiff's 'business or property." *Living Designs, Inc. v. E.I. Dupont de Nemours & Co.*, 431 F.3d 353, 361 (9th Cir. 2005) (cleaned up). The Complaint pleads – and

DLA PIPER LLP (US)
LOS ANGELES

therefore Cassidy has admitted – those elements. (Compl. ¶ 77.) The Complaint also pleads that Plaintiffs were and are persons injured in their business or property by reasons of Cassidy's violations of 18 U.S.C. § 1962(c), so they may pursue civil remedies against him under 18 U.S.C. § 1964(c).

Plaintiffs also alleged RICO with sufficient particularity. First, the Complaint pleads that Cassidy conducted an enterprise consisting of Cassidy, Tang, and Asia Aviation. (*See id.* ¶¶ 14, 36, 57, 63, 66, 77-81, 85, 93-94, 96-97, 99, 116, 119, 122, 130, 132, 145 (providing details on Tang and Asia Aviation's role in the RICO enterprise).) And it pleads facts showing that each member of the enterprise has had a separate existence from the enterprise and the other members, including distinct legal statuses. (*See id.* ¶¶ 8-13.)

Second, the Complaint contains detailed allegations laying out the specific facts of Cassidy's racketeering activity, Cassidy's intent to defraud, and the injury to Plaintiffs' business and property caused by the pattern of racketeering activity. (*See id.* ¶¶ 53-55 (identifying Cassidy specifically as the relevant Defendant, and alleging that he made a secret deal with a Jetcraft employee for illegal kickbacks, alleging that Cassidy received those kickbacks, alleging when he received those kickbacks, alleging from whom he received those kickbacks, alleging the amount of the kickbacks, alleging the specific dollar range that he misappropriated through those kickbacks, alleging that the kickbacks were not legitimate commissions, and alleging the specific harm to Plaintiffs from the inflated price and financing obligations they caused); *id.* ¶ 41 (identifying Cassidy specifically as the relevant Defendant, and the specific time period, his wrongful conduct, the specific range of funds he misappropriated, and the specific property he bought with misappropriated funds); *id.* ¶ 42 (identifying Cassidy specifically as the relevant Defendant, and the location of properties he bought with misappropriated funds); *id.* ¶ 43 (identifying Cassidy specifically as the relevant Defendant, and the number and specific value range of automobiles bought with misappropriated funds); *id.* ¶ 44 (identifying Cassidy

specifically as the relevant Defendant, and the cost and locations of gatherings he paid for with misappropriated funds); *id.* ¶¶ 45-48 (identifying Cassidy specifically as the relevant Defendant, and his improper use of company jets, including specific dates and places of departure and landing); *id.* ¶¶ 62-64, 67 (identifying Cassidy specifically as the relevant Defendant, and alleging the time and specific misrepresentation he told and to whom he told them); *id.* ¶ 66 (alleging Cassidy's "deceit[ful] intent"); *id.* ¶¶ 87-88 (alleging that Cassidy "knew the representations were false when he made them" and that Cassidy "intended that [Plaintiffs, among others] would rely on the representations").

The Complaint likewise pleads a pattern of racketeering activity by pleading at least two predicate acts within a 10-year period. Those predicate acts include, but are not limited to, wire fraud and interstate transportation of stolen property. (*Id.* ¶ 78.) For example, the Complaint alleges – and therefore Cassidy has admitted – that Cassidy "used a company jet (including crew services, fuel, and other company assets) to fly himself to Nice, France without any payment or reimbursement . . . to take possession of a new multi-million dollar motoryacht he purchased with misappropriated company funds." (*Id.* ¶ 48; *see also* 18 U.S.C. § 2314.)

Finally, the Complaint pleads – and therefore Cassidy has admitted – domestic injury, and it pleads the enterprise's activities' effects on interstate and foreign commerce. (*See, e.g.*, *id.* ¶ 18 (the "illegal conduct economically disabled [Zetta USA], including the air charter operation in Los Angeles County"); *id.* ¶ 58 (alleging the specific cause and damages to Zetta USA); *id.* ¶¶ 34-35 (alleging that Plaintiff corporations "conduct[ed] domestic and international charter flights").)

### ii. Intentional Misrepresentation (Second Cause of Action)

"The elements of a cause of action for intentional misrepresentation are (1) a misrepresentation, (2) with knowledge of its falsity, (3) with the intent to induce another's reliance on the misrepresentation, (4) actual and justifiable reliance, and (5) resulting damage." *Daniels v. Select Portfolio Servicing, Inc.*, 246 Cal. App. 4th 1150,

1166 (2016). The Complaint properly pleads all of these elements. (Compl. ¶¶ 83-90.)
It likewise pleads and Cassidy has thus admitted facts supporting the claim with the
requisite specificity. For example, it alleges Cassidy's specific misrepresentations (*id.*
¶¶ 62-64, 67, 84-85), to whom he made those misrepresentations (*id.*), and when he
made those representations (*id.* ¶ 62; *see also* Dkt. 107-1 at 44 (admitting in a manner
adverse to Cassidy the matters within the scope of the discovery propounded on him
seeking his position and evidence as to the contents of "ALL DOCUMENTS,
including COMMUNICATIONS, RELATED TO ZETTA's request for additional
loans in September 2017").

### iii. Concealment (Third Cause of Action)

"[T]he elements of an action for fraud and deceit based on concealment are: (1)
the defendant must have concealed or suppressed a material fact, (2) the defendant
must have been under a duty to disclose the fact to the plaintiff, (3) the defendant must
have intentionally concealed or suppressed the fact with the intent to defraud the
plaintiff, (4) the plaintiff must have been unaware of the fact and would not have acted
as he did if he had known of the concealed or suppressed fact, and (5) as a result of
the concealment or suppression of the fact, the plaintiff must have sustained damage."
*Lovejoy v. AT&T Corp.*, 119 Cal. App. 4th 151, 157–58 (2004). The Complaint
properly pleads all of those elements. (Compl. ¶¶ 93-104.) It likewise pleads facts
supporting the claim with the requisite specificity. For example, it alleges what
specific facts Cassidy concealed, from whom they were concealed, how they were
concealed, and when they were concealed, and the specific damage that concealment
caused. (*Id.* ¶¶ 41-45, 54-55, 97-98.)

### iv. False Promises (Fourth Cause of Action)

"[I]n a promissory fraud action, to sufficiently allege[] defendant made a
misrepresentation, the complaint must allege (1) the defendant made a representation
of intent to perform some future action, *i.e.*, the defendant made a promise, and (2)
the defendant did not really have that intent at the time that the promise was made,

*i.e.*, the promise was false." *Beckwith v. Dahl*, 205 Cal. App. 4th 1039, 1060 (2012). The Complaint properly pleads both elements. (Compl. ¶¶ 105-114.) It likewise pleads facts supporting the claim with the requisite specificity. For example, it alleges that Cassidy specifically made the false promises (*id.* ¶ 106), to whom he made those false promises (*id.* ¶¶ 62-64, 67), the specific false promises he made (¶¶ 62-63, 67, 106), and when he made them (*id.* ¶¶ 62, 68, 70, 106). Again, Cassidy has been deemed to have admitted these facts.

>    v. *Conversion, Breaches of Fiduciary Duty, Abuses of Control, Corporate Waste, and Unjust Enrichment (Fifth-Ninth Causes of Action)*

The remaining causes of action are governed by notice pleading standards. For that reason, "[s]pecific facts are not necessary[.]" *Erickson v. Pardus*, 551 U.S. 89, 93 (2007). Instead, the Complaint "need only give the defendant fair notice of what the ... claim is and the grounds upon which it rests." *Id.* (cleaned up). The Complaint easily meets this low bar for the Fifth through Ninth causes of action. *Compare Shanghai Automation Instrument Co. v. Kuei*, 194 F. Supp. 2d 995, 1003 (N.D. Cal. 2001) (conversion properly pled), *with* Compl. ¶¶ 116-125; *compare Gutierrez v. Girardi*, 194 Cal. App. 4th 925, 932 (2011) (breach of fiduciary duty properly pled), *with* Compl. ¶¶ 127-135, 137-141; *compare Swingless Golf Club Corp. v. Taylor*, 679 F. Supp. 2d 1060, 1071 (N.D. Cal. 2009) (corporate waste properly pled), *with* Compl. ¶¶ 143-147; *compare In re Asyst Techs., Inc. Deriv. Litig.*, 2008 WL 2169021, at *11 (N.D. Cal. May 23, 2008) (unjust enrichment properly pled), *with* Compl. ¶¶ 149-152.

## C.   The Monetary Judgment Sought Is Proportionate to the Harm Defendant Caused

This factor asks "whether the recovery sought is proportional to the harm caused by defendant's conduct." *Landstar*, 725 F. Supp. 2d at 921 (cleaned up). Plaintiffs seek a judgment for $38,246,748, plus attorneys' fees and costs, further

described below.[5] This amount is proportionate to the destruction Cassidy left in his wake: the millions of dollars he misappropriated for his personal benefit, the hundreds of millions of dollars in vastly overpriced planes that he caused the Plaintiffs to buy in exchange for kickbacks, the potentially viable businesses he destroyed. Those damages should be trebled under RICO and punitive damages are entirely appropriate. The monetary judgment sought is also appropriate here because of Cassidy's malice and deceit, the enormity and duration of Cassidy's intentional and outrageous wrongdoing, and the need to deter him from similar fraudulent and tortious behavior in the future.

### D.     The Material Facts of this Matter Are Indisputable

The fifth *Eitel* factor requires the Court to consider the possibility of a dispute over material facts. Here, no such possibility exists. First, upon entry of default, all well-pleaded facts in the complaint are taken as true. *PepsiCo*, 238 F. Supp. 2d at 1177; *Geddes v. United Fin. Grp.*, 559 F.2d 557, 560 (9th Cir. 1977). Second, this Court has ordered that "the matters within the scope of the discovery propounded on

---

[5] In addition to the amounts and ways described in this Motion, the Plaintiffs were also damaged in numerous other ways and amounts. (King Decl. ¶¶ 25-27.) Cassidy caused the Plaintiffs to purchase nearly half-a-billion dollars of planes in exchange for the kickbacks and commercial bribes described above at prices well above the fair market value of the aircraft. The Plaintiffs were damaged in an amount at minimum equal to the amount of the kickbacks and bribes. In addition to the amount of the kickbacks and bribes, the Plaintiffs were further damaged by the difference between the amount that the Plaintiffs paid for the planes and the amounts the planes were actually worth. Cassidy's actions directly caused the failure of both Zetta PTE and Zetta USA, which was previously a successful private jet charter business, resulting in a significant loss of business reputation and goodwill. Cassidy also caused the Plaintiffs to pay principal and interest on various loans, investments, and aircraft transactions well in excess of market rates. Cassidy also made numerous actual intent and constructive fraudulent transfers and preferential transfers to various parties, which the Trustee is entitled to avoid and recover. The Trustee expressly reserves the right to seek to recover these damages (and other damages recoverable against the defendants including disgorgement of profits, treble damages, tort damages and other damages) in adversary proceedings in the Plaintiffs' bankruptcy proceedings. By identifying specific categories and amounts of damages in this motion for default judgment, the Trustee in no way intends to waive or limit the damages that may be recoverable against the defendants in any of the adversary proceedings or any other party, or to waive or limit the Trustee's ability to avoid and recover any fraudulent or preferential transfers.

Cassidy seeking his position and evidence . . . are deemed admitted in a manner that is adverse to him." (Dkt. 126 at 4.) This Court thus "direct[ed] that the matters embraced in [its] order [and] the other [facts it] designated . . . be taken as established for purposes of [this] action, as the [Plaintiffs] claim[]." Fed. R. Civ. P. 37(b)(2)(A)(i).

### E.   More than Mere Lack of Excusable Neglect, Cassidy Acted Willfully and in Bad Faith

Cassidy has had every chance to avoid entry of default judgment. "This action has been pending for more than three years and Cassidy has failed to participate in discovery or any other aspect of the proceedings." (Dkt. 126 at 4.) Cassidy cannot possibly claim excusable neglect because this Court has already found that his conduct has been willful and in bad faith. (*Id.*) That far exceeds the low showing required by this factor.

### F.   The General Policy Favoring Decisions on the Merits Does Not Weigh Against Entering Default Judgment Here

While "[c]ases should be decided on their merits whenever reasonably possible," *Eitel*, 782 F.2d at 1472, "the mere existence of Rule 55(b) 'indicates that this preference, standing alone, is not dispositive.'" *PepsiCo*, 238 F. Supp. 2d at 1177 (quoting *Kloepping v. Fireman's Fund*, 1996 WL 75314, at *3 (N.D. Cal. Feb. 13, 1996)); *see also F.T.C. v. Hope for Car Owners, LLC*, 2013 WL 322895, at *4 (E.D. Cal. Jan. 24, 2013) (preference in favor of decision on merits is not dispositive, especially where defendant fails to appear or defend itself). Entry of default judgment is appropriate when, as here, a decision on the merits is impractical, if not impossible, because Cassidy has failed to participate in the litigation. *See PepsiCo*, 238 F. Supp. 2d at 1177. In these circumstances, this factor favors Plaintiffs.

## VI. The Damages Sought Are Reasonable, Appropriate, and Supported by the Evidence

Plaintiffs seek a monetary judgment against Cassidy of $38,246,748, plus attorneys' fees and costs, which includes:

- **The amount of the kickbacks and commercial bribes (Compl. ¶¶ 54, 144).**
Cassidy received at least $1,086,459 in payments or items of value from Jahid
Fazal-Karim, Jetcraft, and Bombardier which are admitted to be illegal
kickbacks or commercial bribes without the Plaintiffs' knowledge or consent.
(Declaration of Luke Furler ("Furler Decl."), attached hereto, ¶¶ 8-9.)
Specifically, Cassidy received two payments of $500,000 each from Jetcraft to
Cassidy personally that were included in the price of two planes purchased by
the Plaintiffs. Cassidy also received a credit worth $42,569 on an obligation
that he personally owed to Fazal-Karim on June 2, 2017 relating to the yacht
Nyota. (*Id.* ¶ 8; *see also* Dkt. 107-1 at 65 (Cassidy admitting that he "received
payment or items of value . . . from Jahid Fazal-Karim" and the same from
"Jetcraft"); Dkt. 107-1 at 23 (admitting in a manner adverse to Cassidy the
matters within the scope of the discovery propounded on him seeking his
position and evidence as to "ALL material facts RELATED TO [Cassidy's]
relationship with Jahid Fazal-Karim" and "ANY payments or items of value
. . . that [Cassidy] received from Jahid Fazal-Karim"); Dkt. 107-1 at 26, 41
(admitting in a manner adverse to Cassidy the matters within the scope of the
discovery propounded on him seeking his position and evidence regarding
"ALL material facts RELATED TO YOUR purchase, operations, sale, transfer,
and insurance of the Nyota" yacht and documents and communications relating
to the Nyota); Dkt. 107-1 at 51-52.) Cassidy also personally received F1 Tickets
from Bombardier worth $43,890 on July 30, 2016. (Furler Decl. ¶ 9; Dkt. 107-
1 at 64 (Cassidy admitting that he "received payments or items of value . . .
from BOMBARDIER"); Dkt. 107-1 at 25-26 (admitting in a manner adverse
to Cassidy the matters within the scope of the discovery propounded on him
seeking his position and evidence as to "ALL material facts RELATING TO
ANY transactions between ZETTA and BOMBARDIER" and "any payments
. . . that [Cassidy] received from BOMBARDIER"); Dkt. 107-1 at 45

(admitting in a manner adverse to Cassidy the matters within the scope of the discovery propounded on him seeking his position and evidence as to "ALL DOCUMENTS supporting [Cassidy's] contention that [Cassidy] did not receive any kickbacks or payments from BOMBARDIER or any entity affiliated with BOMBARDIER"); Dkt. 107-1 at 52.)

- The amount of funds Cassidy misappropriated (Compl. ¶¶ 41-50, 54). Cassidy embezzled at least $11,662,457 from the Plaintiffs for the purchase of a yacht and personal vehicles, the use of the Plaintiff's aircraft for personal reasons, the purchase of Cassidy's personal residence, the use of corporate credit cards for personal or unauthorized expenses, payment of Cassidy's personal income taxes, and transfers to his personal bank accounts. (Furler Decl. ¶¶ 11-16; Dkt. 107-1 at 26, 42-43 (admitting in a manner adverse to Cassidy the matters within the scope of the discovery propounded on him seeking his position and evidence regarding "ALL material facts RELATED TO YOUR purchase, operations, sale, transfer, payroll, and insurance of the Dragon Pearl" yacht and documents and communications relating to the Dragon Pearl); Dkt. 107-1 at 47 (admitting in a manner adverse to Cassidy the matters within the scope of the discovery propounded on him seeking his position and evidence as to the contents of "ALL DOCUMENTS including COMMUNICATIONS, RELATING TO ANY vehicles purchased, used, or operated by [Cassidy] or on [Cassidy's] behalf using ZETTA's funds"); Dkt. 107-1 at 65 (Cassidy admitting that he "purchased vehicles for personal use using ZETTA's funds" and "flew on ZETTA's aircraft for personal reasons unrelated to ZETTA activities"); Dkt. 107-1 at 40 (admitting in a manner adverse to Cassidy the matters within the scope of the discovery propounded on him seeking his position and evidence as to the contents of "ALL DOCUMENTS, including COMMUNICATIONS, RELATED TO [Cassidy's] purchase of 3 Ardmore Park, unit #20-01 in Singapore"); Dkt. 107-1 at 46-47 (admitting in a manner

adverse to Cassidy the matters within the scope of the discovery propounded on him seeking his position and evidence as to the contents of "ALL DOCUMENTS supporting the fact that transactions on [Cassidy's] corporate credit card were for ZETTA-related business purposes"); Dkt. 107-1 at 47 (admitting in a manner adverse to Cassidy the matters within the scope of the discovery propounded on him seeking his position and evidence as to the contents of "ALL DOCUMENTS, including COMMUNICATIONS, related to a payment of $3,666,666 to YOU on September 22, 2016 . . . at HSBC Singapore").)

- Treble damages available under 18 U.S.C. § 1964(c) (Compl. ¶¶ 17, 77; *id.* at 23 ¶ v.) Plaintiffs suffered at least $12,748,916 in damages to their business or property caused by Cassidy's RICO violations. (Furler Decl. ¶¶ 8-16.) Under 18 U.S.C. § 1964(c), "[a]ny person injured in his business or property by reason of a violation of [18 U.S.C. § 1962] may sue . . . and shall recover threefold the damages he sustains and the cost of the suit, including a reasonable attorney's fee[.]" Accordingly, Plaintiffs seek a judgment in the amount of $38,246,748 after trebling and before adding attorneys' fees and costs and punitive and exemplary damages.

- Plaintiffs' attorneys' fees and costs of this suit. (Compl. ¶¶ 58; *id.* at 23 ¶¶ vi and viii). Under 18 U.S.C. § 1964(c), Plaintiffs are entitled to recover "the cost of the suit, including a reasonable attorney's fee." Under Local Rule 55-3, those fees "shall be calculated" according to a schedule, which for judgments over $100,000 is calculated as $5,600 plus 2 percent of the amount over $100,000. In this case, that amount is $768,535.

- Punitive and exemplary damages. (Compl. at 23 ¶ iv.) Punitive damages are appropriate here because Plaintiffs suffered actual damages from Cassidy's malice and deceit, because of the enormity and duration of Cassidy's intentional and outrageous wrongdoing, and because of the need to deter him

from similar fraudulent and tortious behavior in the future. *See In re Late Fee & Over-Limit Fee Litig.*, 741 F.3d 1022, 1027 (9th Cir. 2014); *see also Ditullio v. Boehm*, 662 F.3d 1091, 1098 (9th Cir. 2011); Restatement (Second) of Torts § 908 (1979).

- ▪ <u>Restitution in the form of disgorgement of all illicit proceeds generated as a result of Cassidy's wrongful conduct (Compl. at 23 ¶ iii)</u>. Cassidy has wrongfully retained illicit proceeds, including the kickbacks, commercial bribes, and direct and indirect benefits described above, in the amount of $12,748,916. (King Decl. ¶¶ 15, 24.) [6]

## VII. Conclusion

For the reasons above, Plaintiffs request that the Court enter an order of default judgment against Cassidy in the amount of $39,015,283, as well as any punitive damages that this Court deems appropriate.

DATED: February 19, 2021          **DLA PIPER LLP (US)**

By: <u>/s/ David B. Farkas</u>
DAVID B. FARKAS
JOHN K. LYONS (*Pro Hac Vice*)
JEFFREY S. TOROSIAN (*Pro Hac Vice*)

Attorneys for Jonathan D. King as
Chapter 7 Trustee

---

[6]As more fully described in footnote 5, the Trustee in no way intends to waive or limit the damages that may be recoverable against the defendants in any of the adversary proceedings or any other party, or to waive or limit the Trustee's ability to avoid and recover any fraudulent or preferential transfers

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

PLAINTIFFS' MOTION FOR DEFAULT
CASE NO. 2:17-CV-6648 (JAK)

DLA PIPER LLP (US)
LOS ANGELES