**Declaration of Luke Furler**

I, Luke Furler, declare as follows:

1. I am a partner with AJCapital Advisory Pte. Ltd. ("AJCapital"). Unless otherwise stated, the following facts are within my personal knowledge or based on information made available to me. If called to testify as a witness about these statements, I could and would competently testify.

2. AJCapital have been retained by the Trustee, Jonathan D. King, in *In re Zetta Jet USA, Inc., et al.*, 17-bk-21386-SK, pending in the United States Bankruptcy Court for the Central District of California. Among other things, AJCapital are responsible for securing and analyzing the Plaintiffs' books and records, providing general assistance to the Trustee to exercise his powers in relation to the Plaintiffs' assets located in Singapore, and any proceeds thereof, assisting in the recovery of certain claims that the Plaintiffs may have against counterparties in the Asia Pacific region, and performing other related services at the request of the Trustee.

3. I have a Master of Accounting degree from Curtin University of Australia. I am a Chartered Accountant of Australia and New Zealand (CAANZ), a Chartered Accountant in England and Wales, and a Certified Public Accountant of Hong Kong (HKICPA) and the United States (American Institute of CPAs). I am an Approved Liquidator in Singapore. I am also a member of the American Bankruptcy Institute (ABI), the International Association of Restructuring, Insolvency and Bankruptcy Professionals (INSOL), and a board member of The Turnaround Management Association (TMA).

4. I have extensive experience in complex and high-value international commercial transactions, in a wide range of operational and financial restructuring and advisory work.

5. As part of this engagement, I have reviewed and analyzed the Plaintiffs' books and records for the purpose of identifying whether and the extent to which Defendant Geoffrey Owen Cassidy ("Cassidy") misappropriated money and assets

belonging to the Plaintiffs, whether such misappropriation was the result of embezzlement, kickbacks received (and not properly disclosed to the Plaintiffs) in connection with the purchase of multi-million-dollar airplanes, or other conversion.

6. This Declaration summarizes the content of voluminous documents contained in the Plaintiffs' books and records. These documents are too voluminous to be conveniently examined by the Court (and they are currently located in Singapore). The original records are in my possession, custody, and control and are available for copying at my place of business. Unless otherwise noted, the documents appear to have been prepared by the Plaintiffs' personnel with knowledge or from information transmitted by someone with knowledge, at or near the time of the events described in the documents, in the course of the Plaintiffs' regularly conducted activity and in their regular practice.

7. I make this Declaration in support of the Trustee's Motion for Default Judgment against Cassidy in order to quantify certain of the damages suffered by the Plaintiffs as a result of Cassidy's improper conduct as established by my review and analysis of the Plaintiffs' books and records and the facts admitted in this case by virtue of this Court's January 8, 2021 sanctions order [Dkt. 126 at 4] and the default entered by this Court on January 11, 2021 [Dkt. 127]. This declaration is not intended to set forth a comprehensive analysis, description, or listing of the full amount of recoverable damages that the Plaintiffs suffered as the result of Cassidy's actions or the actions of other parties against whom the Trustee has brought separate claims. The Trustee reserves all rights to seek these damages and damages in excess of those described herein against third parties that are not party to this case; the description of the Plaintiffs' damages as set forth herein is not intended to prejudice the Trustee's rights in that or any other regard.

8. Cassidy received payment or items of value from Jahid Fazal-Karim or Jetcraft that are admitted to be illegal kickbacks received without the Plaintiffs' knowledge or consent. [Dkt. 1 ¶¶ 54-55, 144; Dkt. 107-1 at 23, 65.] Specifically, based

on my review of the Plaintiffs' books and records, my review of the Declaration of Jahid Fazal-Karim in *King v. Jetcraft Corporation*, 2:17-bk-21386-SK [Docket No. 10-1], and my analysis as described above, Cassidy received two payments of $500,000 each from Jetcraft to Cassidy personally that were included in the price of two planes purchased by the Plaintiffs. Cassidy also received a credit worth $42,569 on an obligation that he personally owed to Fazal-Karim on June 2, 2017 relating to the yacht Nyota. [Dkt. 1 ¶ 41.]

9. Cassidy received payments or items of value from Bombardier that are admitted to be kickbacks. [Dkt. 107-1 at 45.] Specifically, based on my review of the Plaintiffs' books and records and my analysis as described above, Cassidy personally received F1 Tickets from Bombardier worth $43,890 on July 30, 2016.

10. Cassidy purchased a yacht and vehicles that are admitted to be for personal use using the Plaintiffs' funds, without the Plaintiffs' knowledge or consent. [Dkt. 1 ¶¶ 41, 43, 56, 97, 121, 128, 144; Dkt. 107-1 at 47, 65.] Specifically, based on my review of the Plaintiffs' books and records and my analysis as described above, Cassidy caused the Plaintiffs to pay $3,324,105 in a series of five transactions on March 24, 2016, May 14, 2016, August 16, 2016, September 12, 2016, and December 5, 2016, to purchase the yacht Dragon Pearl in 2016, which Cassidy then titled in the name of a third party rather than the Plaintiffs. Cassidy also caused the Plaintiffs to pay additional expenses relating to the Dragon Pearl of $427,640. Cassidy also caused the Plaintiffs to pay $84,122 for one car and $302,070 for a second car.

11. Cassidy has admitted to flights on Plaintiffs' aircraft that were for personal reasons unrelated to Plaintiffs' activities without reimbursement. [Dkt. 1 ¶¶ 45-50, 56, 121, 128, 144; Dkt. 107-1 at 65.] Specifically, based on my review of the Plaintiffs' books and records and my analysis as described above, Cassidy used aircraft owned by the Plaintiffs to make trips worth $1,029,056 that were not invoiced by the Plaintiffs.

12. Cassidy has admitted to using Plaintiffs' funds to purchase real estate, including in Singapore, without Plaintiffs' knowledge or consent. [Dkt. 1 ¶ 42; Dkt. 107-1 at 40.] Specifically, based on my review of Plaintiffs' books and records and my analysis as described above, Cassidy caused the Plaintiffs to make payments totaling $967,964 to purchase 3 Ardmore Park, Unit 20-01, Singapore 259950, make renovations to that property, and pay various other expenses relating to that property.

13. Cassidy has admitted to using Plaintiffs' funds for travel, food, and entertainment without Plaintiffs' knowledge or consent. [Dkt. 1 ¶ 44; Dkt. 107-1 at 46-47.] Specifically, based on my review of Plaintiffs' books and records and my analysis as described above, Cassidy charged corporate credit cards for accommodation, overseas transport and travel, food, and entertainment without identifying appropriate business purposes in an amount totaling $455,877 and for other personal expenses in an amount totaling $404,918.

14. Cassidy also submitted claims for reimbursement and was paid by the Plaintiffs for accommodation, overseas transport and travel, food, and entertainment without identifying appropriate business purposes in an amount totaling $805,481 and for personal expenses totaling $101,211.

15. Based on my review of Plaintiffs' books and records and my analysis as described above, Cassidy caused the Plaintiffs to pay $93,347 for his personal income taxes.

16. Based on my review of the Plaintiffs' books and records and my analysis as described above, Cassidy caused the Plaintiffs to transfer $3,666,666 from the Plaintiffs' HSBC bank account to Cassidy's personal bank account on or about September 22, 2016.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on February **17**, 2021 in Singapore.

*(signature)* **Luke Anthony FURLER**