UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV17-06648 JAK (GJSx) | Date | September 1, 2021 |
|---|---|---|---|
| Title | James N.H. Seagrim et al. v. Geoffery Owen Cassidy et al. | | |

| Present: The Honorable | JOHN A. KRONSTADT, UNITED STATES DISTRICT JUDGE |
|---|---|
| T. Jackson | Not Reported |
| Deputy Clerk | Court Reporter / Recorder |
| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
| Not Present | Not Present |

**Proceedings:** **PLAINTIFFS' MOTION FOR DEFAULT JUDGMENT AGAINST DEFENDANT GEOFFREY OWEN CASSIDY (DKT. 131)**

**I.    Introduction**

On September 8, 2017, James N.H. Seagrim ("Seagrim"), Stephen M. Walter ("Walter"), Zetta Jet Pte. Ltd. ("Zetta PTE") and Zetta Jet USA, Inc. ("Zetta USA") brought this action against Geoffery O. Cassidy ("Cassidy"), Miranda J. Tang ("Tang") and Asia Aviation Holdings Pte. Ltd. ("Asia Aviation"). The Complaint advances nine causes of action: (i) violation of the Racketeer Influenced and Corrupt Organizations Act; (ii) intentional misrepresentations (fraud); (iii) concealment; (iv) false promises; (v) conversion; (vi) breach of fiduciary duty; (vii) abuse of control; (viii) corporate waste; and (ix) unjust enrichment. Dkt. 1.

Defendants Tang and Asia Aviation were dismissed on November 22, 2017 and August 2, 2018, respectively. Dkts. 19, 56. Thereafter, on November 5, 2018, Plaintiffs Seagrim and Walter withdrew as parties. Dkt. 62. Zetta PTE and Zetta USA filed separate voluntary bankruptcy petitions under Chapter 11, and a motion to approve joint administration of the bankruptcy cases was granted. Dkt. 56 at 5.[1] Jonathan D. King was appointed as the bankruptcy trustee (the "Trustee"). *Id.* On August 2, 2018, it was determined that the claims advanced by Zetta PTE and Zetta USA are the property of their respective bankruptcy estates, and the Trustee is the real party in interest. *Id.* at 6. Thus, the remaining parties are plaintiffs -- the Trustee (as the real party in interest), and Zetta PTE and Zetta USA (as nominal plaintiffs) (collectively, "Plaintiffs") -- and Defendant Cassidy. On February 13, 2019, counsel for Cassidy withdrew from the action, and Cassidy proceeded as a self-represented litigant. Dkts. 66, 77. On January 8, 2021, Cassidy was sanctioned pursuant to Fed. R. Civ. P. 37. Dkt. 126 at 4. As part of those sanctions, the Answer filed by Cassidy was stricken. *Id.* The Clerk was directed to enter a corresponding default. *Id.*

On February 19, 2021, Plaintiffs filed a Motion for Default Judgment Against Defendant Geoffrey Owen Cassidy. Dkt. 131 (the "Motion"). Based on a review of the matters presented by the Motion, and pursuant to L.R. 7-15, a determination was made that the Motion may be decided without oral argument. Dkt. 133. For the reasons stated in this Order, the Motion is **GRANTED-IN-PART**.

---

[1] The bankruptcy proceedings were later converted from Chapter 11 cases to Chapter 7 cases. Dkt. 56 at 5.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| | | | |
|---|---|---|---|
| Case No. | LA CV17-06648 JAK (GJSx) | Date | September 1, 2021 |
| Title | James N.H. Seagrim et al. v. Geoffery Owen Cassidy et al. | | |

#

**II.   Factual and Procedural Background**

    **A.   The Parties**

Zetta PTE is a Singapore corporation whose principal place of business is there. Cassidy Decl., Dkt. 23-2 ¶ 5. It provides "private, international luxury jet travel for high net-worth individuals." *Id.* Zetta USA is a wholly owned subsidiary of Zetta PTE. Seagrim Decl., Dkt. 38-1 ¶ 2. Zetta USA is a California corporation whose principal place of business is here. *Id.* ¶ 55. As noted, the Trustee holds that position as to the respective bankruptcy estates of Zetta PTE and Zetta USA. Seagrim and Walter are both citizens of California. They are minority shareholders of Zetta PTE and members of the board of directors of the Zetta Entities. *Id.* ¶¶ 1-2, 7. Seagrim was, at all relevant times, the Director of Operations for the Zetta Entities. *Id.* ¶ 2. Walter was, at all relevant times, the Director of Sales for Zetta PTE and the President of Zetta USA. *Id.* ¶ 7. Cassidy is domiciled in Singapore. Cassidy Decl., Dkt. 23-2 ¶¶ 1-2. Cassidy was, at all relevant times, the Managing Director of Zetta PTE. *Id.* ¶ 5. He was also a director and 51% shareholder of Asia Aviation. *Id.* ¶¶ 1, 3.[2] Asia Aviation is incorporated in Singapore and has its principal place of business there. *Id.* ¶ 3. Asia Aviation is a 34% shareholder of Zetta PTE. *Id.*; Seagrim Decl., Dkt. 38-1 ¶ 56.

    **B.   Allegations in the Complaint**

        1.   <u>The Alleged Misappropriation</u>

The principal basis for the claims advanced in this action is Cassidy's alleged misappropriation of corporate funds of Zetta PTE for unauthorized personal use. *See, e.g.*, Dkt. 1 ¶ 41. The Complaint alleges that, among other things, Cassidy used Zetta PTE's funds to purchase and/or renovate certain "motoryacht[s]," as well as real property in France and Singapore. *Id.* ¶¶ 41-42. It also alleges that Cassidy used funds of Zetta PTE to purchase luxury automobiles in Singapore and to host "extravagant gatherings" in Monaco, Los Angeles and Macao. *Id.* ¶¶ 43-44. It alleges that Cassidy used aircraft owned by Zetta PTE for his own benefit without prior authorization from the board of directors. *Id.* ¶¶ 45-50. For example, it alleges that in February 2017, Cassidy used a corporate aircraft to transport himself and a friend from Tokyo to Los Angeles "without any payment or reimbursement" to Zetta PTE and/or Zetta USA. *Id.* ¶ 47. The Complaint also alleges that Cassidy received "illegal" and "secret" kickbacks for five Bombardier aircraft purchases made by Zetta PTE in 2017. *Id.* ¶¶ 53-55.

        2.   <u>The Alleged Capital Infusion Deal</u>

The Complaint alleges that, in June 2017, Cassidy made certain misrepresentations to Seagrim and Walter. They included that it was necessary for each of them, and Asia Aviation, to relinquish seven percent of their respective Zetta PTE shares in order to secure an investment from Truly Great Global Limited ("TGGL"). *Id.* ¶¶ 62-63. It alleges that TGGL had actually conditioned its investment on receiving ten percent -- not 21 percent -- of Zetta PTE's shares. *Id.* ¶ 64. The Complaint alleges that despite Cassidy's representations, Asia Aviation did not contribute any of its Zetta PTE shares to obtain

---

[2] The remaining 49% interest in Asia Aviation is held by Tang. Cassidy Decl., Dkt. 23-2 ¶ 3.

#

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV17-06648 JAK (GJSx) | | Date | September 1, 2021 |
|---|---|---|---|---|
| Title | James N.H. Seagrim et al. v. Geoffery Owen Cassidy et al. | | | |

TGGL's investment (the "Capital Infusion Deal"). *Id.* ¶ 65. It alleges that Cassidy instead "took by deceit" two percent of the shares owned by Seagrim and Walter. *Id.* ¶ 66.

The Complaint alleges that the Capital Infusion Deal diluted Walter's ownership interest in Zetta PTE from approximately 30 to 23 percent and Seagrim's ownership interest from approximately 33.3 to 13 percent. *Id.* ¶¶ 68, 70. It alleges that on August 17, 2017, a majority of Zetta PTE's board of directors voted to remove Cassidy from his position as Managing Director. *Id.* ¶ 74.

### C. Procedural Background

On August 5, 2019, Plaintiff moved for sanctions pursuant to Fed. R. Civ. P. 37. Dkt. 99 (the "Motion for Sanctions"). On February 18, 2020, an Order issued deferring a ruling on the Motion for Sanctions, setting deadlines for Plaintiffs to make certain filings and for Cassidy to serve on Plaintiffs certain discovery responses. Dkt. 104 at 4-5 (the "Deferral Order"). On March 4, 2020, Plaintiffs filed a Rule 37(d)(1)(B) certification. Dkt. 107. On May 11, 2020, Plaintiffs filed a Notice of Compliance, which stated, *inter alia*, that "Defendant has not provided any response to Plaintiffs' discovery requests and continues to not participate in this litigation." Dkt. 108 at 4.

On January 8, 2021, the Motion for Sanctions was granted-in-part. Dkt. 126 (the "Sanctions Order"). It determined that, during the three-year pendency of this action, Cassidy failed to participate in discovery or any other aspect of the proceedings. Dkt. 126 at 4. It noted that Cassidy had been warned of the consequences of such conduct and had been provided a final chance to comply with his discovery obligations. *Id.* Based on Cassidy's continued failure to participate in this action, the Sanctions Order determined that "Cassidy has exhibited the willfulness that justifies the imposition of" terminating sanctions. *Id.*

Pursuant to Fed. R. Civ. P. 37(b)(2)(A)(i), the matters within the scope of the discovery propounded on Cassidy, which are set forth in Exhibits D, E and F to the Declaration of Joel Athey (Dkt. 107-1), were deemed admitted in a manner that is adverse to him. Dkt. 126 at 4. As noted, the Answer filed by Cassidy (Dkt. 59) was stricken pursuant to Fed. R. Civ. P. 37(b)(2)(A)(iii), and the Clerk was directed to enter the default of Cassidy. *Id.* Plaintiffs' request for default judgment was denied without prejudice to the filing of a motion for such relief on or before January 29, 2021. *Id.* After receiving an extension of that deadline, Plaintiffs filed the Motion on February 19, 2021. Dkt. 131.

## III. Analysis

### A. Legal Standards

#### 1. Procedural Requirements for Entry of Default Judgment

Local Rule 55-1 requires that a party moving for default judgment submit a declaration or include information with respect to each of the following: (i) when and against which party default has been entered; (ii) the identification of the pleading to which default has been entered; (iii) whether the defaulting party is an infant or incompetent person, and if so, whether that person is represented by a general guardian, committee, conservator or other representative; (iv) the Servicemembers Civil Relief

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV17-06648 JAK (GJSx) | Date | September 1, 2021 |
|---|---|---|---|
| Title | James N.H. Seagrim et al. v. Geoffery Owen Cassidy et al. | | |

Act, 50 App. U.S.C. § 3931 does not apply; and (v) notice has been provided to the defaulting party, if required by Fed. R. Civ. P. 55(b)(2). C.D. Cal. Loc. R. 55-1.

    2.    <u>Substantive Standards for Entry of Default Judgment</u>

Fed. R. Civ. P. 55(b) grants discretion to the trial court with respect to whether a default judgment should be entered. *Aldabe v. Aldabe*, 616 F.2d 1089, 1092 (9th Cir. 1980). The entry of default does not alone warrant or require the entry of a default judgment. *Id.* The Ninth Circuit has established seven factors that may be applied in determining whether a default judgment is appropriate. *Eitel v. McCool*, 782 F.2d 1470, 1471-72 (9th Cir. 1986). They are: (i) the possibility of prejudice to the plaintiff; (ii) the merits of plaintiff's substantive claim; (iii) the sufficiency of the complaint; (iv) the sum of money at stake in the action; (v) the possibility of a dispute concerning material facts; (vi) whether the default was due to excusable neglect; and (vii) the strong policy favoring decisions on the merits. *Id.* "The general rule of law is that upon default the factual allegations of the complaint, except those relating to the amount of damages, will be taken as true." *Geddes v. United Fin. Grp.*, 559 F.2d 557, 560 (9th Cir. 1977).

**B.**    **Application**

    1.    <u>Procedural Requirements</u>

Plaintiffs have complied with Local Rule 55-1. Luke Furler, who was retained as an accountant by the Trustee, submitted a declaration stating that default was entered against Cassidy on January 11, 2021. Declaration of Luke Furler ("Furler Decl."), Dkt. 131-2 ¶ 7. This is confirmed by the corresponding docket entry. Dkt. 127. The Motion identifies the Complaint as the pleading to which Cassidy did not respond and as to which default was entered. Dkt. 131 at 12. The Trustee submitted a declaration stating that Cassidy is neither an infant nor an incompetent person. Declaration of Jonathan D. King ("King Decl."), Dkt. 131-1 ¶ 8. The Trustee declares that Cassidy is not in the military "or otherwise entitled to the protection of the Servicemembers Civil Relief Act." *Id.* ¶ 9. Finally, notice of the Motion was served on Cassidy by electronic mail on February 19, 2021. Proof of Service, Dkt. 131-4 at 1.

    2.    <u>*Eitel* Factors</u>

        a)    The Possibility of Prejudice

A plaintiff is prejudiced if, absent the entry of a judgment, that party would be left without a remedy. *See Philip Morris USA, Inc., v. Castworld Prods., Inc.*, 219 F.R.D. 494, 499 (C.D. Cal. 2003) ("Plaintiff would suffer prejudice if the default judgment is not entered because Plaintiff would be without other recourse for recovery."); *PepsiCo v. Cal. Sec. Cans*, 238 F. Supp. 2d 1172, 1177 (C.D. Cal. 2002) ("If Plaintiffs' motion for default judgment is not granted, Plaintiffs will likely be without other recourse for recovery."). Cassidy's failure to participate in this action has resulted in the entry of his default, and thus left Plaintiffs with no remedy aside from default judgment. Accordingly, this factor weighs in favor of granting the Motion.

        b)    The Merits of Plaintiffs' Substantive Claims and the Sufficiency of the Complaint

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV17-06648 JAK (GJSx) | Date | September 1, 2021 |
|---|---|---|---|
| Title | James N.H. Seagrim et al. v. Geoffery Owen Cassidy et al. | | |

The second and third *Eitel* factors overlap because plaintiffs must properly state a claim and the allegations contained in a complaint are deemed true. Thus, if the Complaint is sufficient, Plaintiffs' substantive claims have merit for purposes of a request for the entry of default judgment. *PepsiCo*, 238 F. Supp. 2d at 1175; *see also Danning v. Lavine*, 572 F.2d 1386, 1388 (9th Cir. 1978) (allegations in the complaint must state a claim upon which the plaintiff may recover). The second and third *Eitel* factors "require that a [movant] 'state a claim on which [it] may recover.'" *PepsiCo*, 238 F. Supp. 2d at 1175 (quoting *Kloepping v. Fireman's Fund*, No. C 94-2684 TEH, 1996 WL 75314, at *2 (N.D. Cal. Feb. 13, 1996)).

As noted, the Complaint advances nine causes of action. Dkt. 1. Assuming the truth of the allegations, as is required, *see Geddes*, 559 F.2d at 560, Plaintiffs have demonstrated that claims (iii), (v), (vi) and (viii) each has merit as to Cassidy. They are addressed in that sequence.

      (1)    <u>RICO Violations – First Cause of Action</u>

          (a)    General Allegations

The Racketeer Influenced and Corrupt Organizations Act ("RICO") makes it "unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt." 18 U.S.C. § 1962(c). Racketeering activities, which are also called "predicate acts," are defined in 18 U.S.C. § 1961(1). They include mail fraud, wire fraud, money laundering, bribery and securities fraud. A "pattern" "requires at least two acts of racketeering activity, one of which occurred after the effective date of this chapter and the last of which occurred within ten years (excluding any period of imprisonment) after the commission of a prior act of racketeering activity." 18 U.S.C. § 1961(5). There must be a demonstrable relationship between the predicate acts and threatened continued activity to establish a pattern. *Howard v. Am. Online Co., Inc.*, 208 F.3d 741, 746, 749 (9th Cir.2000). "Related" conduct "embraces criminal acts that have the same or similar purposes, results, participants, victims, or methods of commission, or otherwise are interrelated by distinguishing characteristics and are not isolated events." *Id.* (internal quotation marks omitted). It is not enough to show only that the acts have the same participants. *Id.*

The RICO statute provides for a private right of action. 18 U.S.C. § 1964(c). To prevail on a civil RICO claim, a plaintiff must prove "that the defendant engaged in (1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity and, additionally, must establish that (5) the defendant caused injury to plaintiffs business or property." *Chaset v. Fleer/Skybox Int'l, LP*, 300 F.3d 1083, 1086 (9th Cir. 2002). The Ninth Circuit has made it clear that when default judgment is sought under RICO, "pleading requirements should be enforced strictly." *Alan Neuman Productions, Inc. v. Albright*, 862 F.2d 1388, 1393 (1988). "Not only is the monetary penalty for failure to answer greatly enhanced by the provisions for treble damages, but a defendant's reputation may be stigmatized." *Id.*

The Complaint alleges that Cassidy, Tang and Asia Aviation "conducted an enterprise through a pattern of racketeering activity that caused injury to the business and/or property of Plaintiffs." Dkt. 1 ¶ 77. It further alleges that Cassidy "engaged in multiple predicate acts within a 10-year period including (but not limited to) wire fraud and interstate transportation of stolen property." *Id.* ¶ 78. Plaintiffs claim, for example, that Cassidy "made a secret deal with person(s) from Jetscraft from which [he] received an

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV17-06648 JAK (GJSx) | Date | September 1, 2021 |
|---|---|---|---|
| Title | James N.H. Seagrim et al. v. Geoffery Owen Cassidy et al. | | |

illegal kickback of approximately $2 million from each aircraft purchase without knowledge or consent of Plaintiff[s] . . . by which [he] has misappropriated, conservatively, between $14 million and $18 million dollars of company assets and/or opportunities." *Id.* ¶ 54. The Complaint further alleges that Cassidy "used a company jet (including crew services, fuel, and other company assets) to fly himself to Nice, France without any payment or reimbursement . . . to take possession of a new multi-million dollar motoryacht he purchased with misappropriated company funds." *Id.* ¶ 48. It is alleged that the "kickbacks inflated the price the company paid to acquire the various aircraft" and "inflated the financial obligations of [Zetta PTE]." *Id.* ¶ 55.

Due the foregoing, the Complaint alleges that Cassidy's "wrongful and illegal conduct . . . has wrongfully deprived [Plaintiffs] of at least $20 million to $30 million." *Id.* ¶ 56.

(b)     Enterprise

A RICO "'enterprise' includes any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity." 18 U.S.C. § 1961(4). Although the statute makes clear that a single such entity can be an "enterprise" unto itself, so too are associated-in-fact groups of entities. *Odom v. Microsoft Corp.*, 486 F.3d 541, 548 (9th Cir. 2007). The "enterprise" and the "pattern of racketeering activity" elements are distinct:

> The enterprise is an entity, for present purposes a group of persons associated together for a common purpose of engaging in a course of conduct. The pattern of racketeering activity is, on the other hand, a series of criminal acts as defined by the statute. The former is proved by evidence of an ongoing organization, formal or informal, and by evidence that the various associates function as a continuing unit. The latter is proved by evidence of the requisite number of acts of racketeering committed by the participants in the enterprise. While the proof used to establish these separate elements may in particular cases coalesce, proof of one does not necessarily establish the other. The 'enterprise' is not the 'pattern of racketeering activity'; it is an entity separate and apart from the pattern of activity in which it engages.

*United States v. Turkette*, 452 U.S. 576, 583 (1981) (internal citations omitted). However, an associated-in-fact enterprise "does not require any particular organizational structure, separate or otherwise." *Odom*, 486 F.3d at 551. Rather, such an enterprise is established by showing the *Turkette* requirements: (a) a common purpose for (b) an ongoing organization (c) which functions as a continuing unit. *Id.* at 552.

In *Odom*, the first element of "common purpose" was satisfied by allegations that two corporations had associated for the purpose of fraudulently increasing the actual number of consumers who used certain software. One corporation allegedly did so by distributing the software and collecting payment information, while the other used the payment information to create customer accounts. *Id.* at 552. The "ongoing organization" element was met by showing that the entities "formed a vehicle" for committing two or more acts of fraud, such as a mechanism to transfer customers' financial information or a cross-marketing agreement. *Id.; see also United Energy Owners Comm., Inc. v. U.S. Energy Mgmt. Sys., Inc.*, 837 F.2d 356, 361 (9th Cir. 1988) (a RICO claim must "allege two or more RICO predicate acts, occurring over a significant period of time, evidencing a threat of continuing activity"). The "continuing unit" element was met by showing that the associated entities engaged in fraudulent activities during a

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| | | | |
|---|---|---|---|
| Case No. | LA CV17-06648 JAK (GJSx) | Date | September 1, 2021 |
| Title | James N.H. Seagrim et al. v. Geoffery Owen Cassidy et al. | | |

period of several years, which did not require that they did so continuously or that both members were involved in every act. *Odom,* 486 F.3d at 552-53.

Plaintiffs argue that "the Complaint pleads that Cassidy conducted an enterprise consisting of Cassidy, Tang, and Asia Aviation." Dkt. 131 at 14. Plaintiffs also argue that Tang and Asia Aviation "ha[ve] had a separate existence from the enterprise and the other members, including distinct legal statuses." Dkt. 131 at 14 (citing Dkt. 1 ¶¶ 8-13).

The Complaint alleges that Tang "knew of and/or participated in some or the above-alleged wrongful conduct by her husband," Cassidy, and that she "failed to prevent, report, and/or rectify such wrongful conduct, although she was duty-bound to do so because she herself [was] a member of [Zetta PTE's] Board of Directors." Dkt. 1 ¶ 57. It is alleged that Cassidy and Tang "took by deceit for their company [Asia Aviation] two percent of [Zetta PTE's] then issued and outstanding shares each from Plaintiffs" Seagrim and Walter. *Id.* ¶ 66.

These allegations do not satisfy Plaintiffs' "burden to identify what each individual did, when they did it, and how they functioned together as a continuing unit." *Savory v. Collectors Universe, Inc.*, No. SA CV 20-00632, 2020 WL 4938464, at *6 (C.D. Cal. July 21, 2020). It is not clear, for example, what alleged wrongful conduct Tang knew of or participated in. In support of the Motion, Plaintiffs only point to "Cassidy's racketeering activity" and his "intent to defraud." Dkt. 131 at 14. In addition to a failure to specify the separate roles of Tang and Asia Aviation, the Complaint fails adequately to allege any common purpose. Thus, Plaintiffs do not plead with sufficient particularity that the three parties associated for the purpose of engaging in the alleged racketeering activity.

Because Plaintiffs have failed sufficiently to plead an enterprise, entry of a default judgment against Cassidy as to the RICO claim is unwarranted.

(2)     Intentional Misrepresentations (Fraud) – Second Cause of Action

"Under California law, the 'indispensable elements of a fraud claim include a false representation, knowledge of its falsity, intent to defraud, justifiable reliance, and damages.'" *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1105 (9th Cir. 2003) (internal citation omitted). "The absence of any one of these required elements will preclude recovery." *Wilhelm v. Pray, Price, Williams & Russell*, 186 Cal. App. 3d 1324, 1332 (1986).

Claims for fraud must meet the heightened pleading requirements of Fed. R. Civ. P. 9(b). Rule 9(b) provides that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). The Ninth Circuit has explained that Rule 9(b) requires a party alleging fraud to state with particularity "the who, what, when, where, and how of conduct charged." *Vess*, 317 F.3d at 1106. Where the fraud at issue takes the form of an omission, the nondisclosure claim must still be pleaded with particularity. *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1127 (9th Cir. 2009).

Plaintiffs' fraud claim against Cassidy is based on his alleged misrepresentations to Seagrim, Walter and Li, "including (but not limited to): (a) that company funds and profits were going to the benefit of [Plaintiffs]; and (b) that [Zetta PTE] nonetheless required the 2017 capital infusion." Dkt. 1 ¶ 84.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV17-06648 JAK (GJSx) | Date | September 1, 2021 |
|---|---|---|---|
| Title | James N.H. Seagrim et al. v. Geoffery Owen Cassidy et al. | | |

Specifically, it is alleged that, in June 2017, Cassidy misrepresented to Seagrim and Walter "that it was necessary to give up more of their [Zetta PTE] ownership to obtain additional capital infusion from an outside investor." *Id.* ¶ 62. It is also alleged that Cassidy misrepresented to Seagrim and Walter that Seagrim, Walter, and Asia Aviation "would each give up shares held by them in [Zetta PTE] equaling seven percent of the shares then issued and outstanding by the company . . . in exchange for further investment by Truly Great Global Limited." *Id.* ¶ 63. It is alleged that Truly Great Global Limited "had actually only requested 10 percent of the company's shares then issued and outstanding, not 21 percent as [Cassidy] had misrepresented to Plaintiffs" Seagrim and Walter. *Id.* ¶ 64. Plaintiffs claim that Asia Aviation "did not contribute shares equal to seven percent of the shares of [Zetta PTE] (or in fact any shares at all) to the 2017 capital infusion deal with Truly Great Global Limited." *Id.* ¶ 65.

The Complaint then alleges that Cassidy "took by deceit for . . . [Asia Aviation] two percent of [Zetta PTE's] then issued and outstanding shares each from Plaintiffs" Seagrim and Walter. *Id.* ¶ 66. Cassidy's alleged misrepresentations harmed Plaintiffs by "dilut[ing] the ownership interest of Plaintiff [Walter] from approximately 30 percent to approximately 23 percent of shares of [Zetta PTE]," *id.* ¶ 68, and "dilut[ing] the ownership interest of Plaintiff [Seagrim] from approximately 33.3 percent to approximately 13 percent of shares of [Zetta PTE]," *id.* ¶ 70. These allegations are sufficient to show harm to Seagrim and Walter; however, the Complaint does not allege any specific harm to Zetta PTE and Zetta USA. There is only a conclusory allegation that Zetta PTE and Zetta USA were harmed by Cassidy's representations. *See id.* ¶ 90.

Accordingly, Plaintiffs have not adequately alleged a basis for the intentional misrepresentation claim against Cassidy.

(3)  Concealment – Third Cause of Action

Under California law, the following are the elements of a cause of action for fraudulent concealment: "(1) the defendant must have concealed or suppressed a material fact, (2) the defendant must have been under a duty to disclose the fact to the plaintiff, (3) the defendant must have intentionally concealed or suppressed the fact with the intent to defraud the plaintiff, (4) the plaintiff must have been unaware of the fact and would not have acted as he did if he had known of the concealed or suppressed fact, and (5) as a result of the concealment or suppression of the fact, the plaintiff must have sustained damage." *Boschma v. Home Loan Ctr., Inc.*, 198 Cal. App. 4th 230, 248 (2011) (quoting *Hahn v. Mirda,* 147 Cal. App. 4th 282, 292 (2007).

"In order to establish fraudulent concealment, the complaint must show: (1) when the fraud was discovered; (2) the circumstances under which it was discovered; and (3) that the plaintiff was not at fault for failing to discover it or had no actual or presumptive knowledge of facts sufficient to put him on inquiry." *Raifman v. Wachovia Secs., LLC*, 649 F. App'x. 611, 613 (9th Cir. 2016) (quoting *Baker v. Beech Aircraft Corp.*, 39 Cal. App. 3d 315, 321 (1974)); *see also Platt Elec. Supply v. EOFF Elec., Inc.*, 522 F.3d 1049, 1055 (9th Cir. 2008) (same). "[W]here no duty is imposed by law to make inquiry, and where, under the circumstances, a prudent man would not be put on inquiry, the mere fact that means of knowledge are open and not availed of does not operate to give constructive notice of the facts." *Bally v. State Farm Life Ins. Co.*, No. 18-cv-04954, 2019 WL 3891149, at *3 (N.D. Cal. Aug. 19, 2019) (quoting *Baker*, 39 Cal. App. 3d at 321-22); *see also Weatherly v. Universal Music Publ'g Grp.*, 125 Cal. App. 4th 913, 919 (2004).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| | | | |
|---|---|---|---|
| Case No. | LA CV17-06648 JAK (GJSx) | Date | September 1, 2021 |
| Title | James N.H. Seagrim et al. v. Geoffery Owen Cassidy et al. | | |

The Complaint alleges that Cassidy

> intentionally failed to disclose important facts to Plaintiffs . . . including (but not limited to): (a) that he was misappropriating corporate funds, assets, and opportunities; (b) that his wrongful conduct caused the company's financial crisis and resultant need for outside capital; (c) that he was lying about intending to contribute seven percent of [Asia Aviation's] shares in [Zetta PTE] to the 2017 capital infusion deal with Truly Great Global Limited; and/or (d) that Truly Great Global Limited had actually only requested 10 percent of the company's shares (not 21 percent) in the 2017 capital infusion deal.

Dkt. 1 ¶ 97.

Plaintiffs claim that Cassidy "concealed such important facts by . . . lying in his communications with Plaintiffs; and removing (and/or directing others to remove) incriminating information from financial documents and other company records." *Id.* ¶ 98. The Complaint further alleges that (i) "Plaintiffs were not aware of such concealed facts"; (ii) Cassidy "intended to deceive Plaintiffs by concealing the facts"; (iii) "Plaintiffs reasonably relied on [his] deception"; and (iv) "Plaintiffs were harmed." *Id.* ¶¶ 100-103.

As to allegations (b), (c) and (d), Plaintiffs again fail to allege that the purported misrepresentations harmed them rather than Seagrim and Walter. However, Plaintiffs have sufficiently alleged a claim for fraudulent concealment as to Cassidy's purported failure to disclose his misappropriation of corporate funds, assets and opportunities.

(4)  False Promises – Fourth Cause of Action

"To maintain an action for deceit based on a false promise, one must specifically allege and prove, among other things, that the promisor did not intend to perform at the time he or she made the promise and that it was intended to deceive or induce the promisee to do or not do a particular thing." *Tarmann v. State Farm Mut. Auto. Ins. Co.*, 2 Cal. App. 4th 153, 159 (1991). "Given this requirement, an action based on a false promise is simply a type of *intentional* misrepresentation, i.e., actual fraud." *Id.* (emphasis in original).

The Complaint alleges that Cassidy "made false promises to Plaintiffs regarding the Capital Infusion Deal with Truly Great Global Limited." Dkt. 1 ¶ 106. As stated with respect to the preceding claims in fraud, Plaintiffs have not sufficiently alleged that they were harmed by the purported misrepresentations made to Seagrim and Walter in connection with the Capital Infusion Deal. Thus, Plaintiffs have not provided a sufficient basis for the claim for false promises as to Cassidy.

(5)  Conversion – Fifth Cause of Action

Conversion is the wrongful exercise of dominion over another's personal property. *See De Vries v. Brumback*, 53 Cal. 2d 643, 647 (1960) (defining conversion as "an act of willful interference with a chattel, done without lawful justification, by which any person entitled thereto is deprived of the use and possession"). "The elements of a conversion are the plaintiff's ownership or right to possession of the property at the time of the conversion; the defendant's conversion by a wrongful act or disposition of

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| | | | |
|---|---|---|---|
| Case No. | LA CV17-06648 JAK (GJSx) | Date | September 1, 2021 |
| Title | James N.H. Seagrim et al. v. Geoffery Owen Cassidy et al. | | |

property rights; and damages." *Oakdale Vill. Grp. v. Fong*, 43 Cal. App. 4th 539, 543-44 (1996), *as modified on denial of reh'g* (Apr. 10, 1996). "[P]laintiff must establish an actual interference with his *ownership* or *right of possession* . . . . Where plaintiff neither has title to the property alleged to have been converted, nor possession thereof, he cannot maintain an action for conversion." *Moore v. Regents of Univ. of Cal.*, 51 Cal. 3d 120, 136 (1990) (emphasis in original) (quoting *Del E. Webb Corp. v. Structural Materials Co.*, 123 Cal. App. 3d 593, 610-11 (1981)).

Plaintiffs allege that Cassidy "wrongfully exercised control over personal property of Plaintiffs." Dkt. 1 ¶ 116. Specifically, Cassidy is alleged to have "intentionally and substantially interfered with the[ir] personal property by . . . using company funds and assets for personal purchases and free transportation; taking illegal kickbacks of funds from aircraft acquisitions that rightfully belonged to the company; and destroying business goodwill and reputation." *Id.* ¶ 121.

Accordingly, taking the allegations of the Complaint as true, Plaintiffs' conversion claim is sufficiently stated as to Cassidy.

(6) <u>Breach of Fiduciary Duty – Sixth Cause of Action</u>

"The elements of a cause of action for breach of fiduciary duty are: (1) the existence of a fiduciary duty; (2) the breach of that duty; and (3) damage proximately caused by that breach." *Mosier v. S. Cal. Physicians Ins. Exch.*, 63 Cal. App. 4th 1022, 1044 (1998). For a fiduciary duty to exist, a person "must either knowingly undertake to act on behalf and for the benefit of another, or must enter into a relationship which imposes that undertaking as a matter of law." *City of Hope Nat'l Med. Ctr. v. Genentech, Inc.*, 43 Cal. 4th 375, 386 (2008).

Under the corporate opportunity doctrine, a fiduciary may not acquire or usurp a corporate opportunity available to the principal. *See Robinson, Leatham & Nelson, Inc. v. Nelson*, 109 F.3d 1388,1392 (9th Cir. 1997) (citing *Kelegian v. Mgrdichian*, 33 Cal. App. 4th 982 (1995)). A fiduciary may not "seize for himself to the detriment of his company business opportunities in the company's line of activities which the company has an interest and prior claim to obtain." *Premier Displays & Exhibits v. Cogswell*, No. SA CV 09-354, 2009 WL 8623588, at *10 (C.D. Cal. Dec. 23, 2009) (quoting *Industrial Indem. Co. v. Golden State Co.,* 117 Cal. App. 2d 519, 534 (1953)).

The Complaint alleges that Cassidy "stood in a fiduciary relationship with the company, such that he owed duties to act in sound discretion and in the best interests of [Zetta PTE] and not to favor his own interests at the expense of [Zetta PTE] and its shareholders." Dkt. 1 ¶ 127. It further alleges that Cassidy "breached his fiduciary duties to [Zetta PTE] by . . . misappropriating corporate funds, assets, and opportunities; using company funds and assets for personal purchases and transportation; and taking illegal kickbacks of funds from aircraft acquisitions that rightfully belonged to [Zetta PTE]." *Id.* ¶ 128. Cassidy "held himself out as Managing Director of [Zetta PTE]." *Id.* ¶ 9. While holding himself out as such, Plaintiffs claim that he "enriched himself without [their] knowledge or consent" by, for example, "using company funds to purchase and renovate real estate, including homes in France and Singapore." *Id.* ¶ 42. The Complaint also provides other examples of conduct by Cassidy without the knowledge or consent of Plaintiffs and in breach of his duty as its "Managing Director." *See id.* ¶¶ 41-48.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| | | | |
|---|---|---|---|
| Case No. | LA CV17-06648 JAK (GJSx) | Date | September 1, 2021 |
| Title | James N.H. Seagrim et al. v. Geoffery Owen Cassidy et al. | | |

For these reasons, the Complaint sufficiently alleges the claim for breach of fiduciary duty as to Cassidy.

(7)  Abuse of Control – Seventh Cause of Action

Plaintiffs allege that Cassidy "exercised control over [Zetta PTE] and its operations, and owed fiduciary duties not to use his position of control . . . for his own personal interests and contrary to the interests of [Zetta PTE] and other shareholders." Dkt. 1 ¶ 137. This claim for abuse of control overlaps with the claim for breach of fiduciary duty. Therefore, it need not be considered as a separate cause of action. *See In re Doorman Prop. Maint.*, No. 15-30912 DM, 2017 WL 90332, at *1 (Bankr. N.D. Cal. Jan. 10, 2017) ("Defendants concede that the facts alleged (albeit disputed) in the first claim could give rise to a claim for breach of fiduciary duty, but seek dismissal of the second claim for 'breach of fiduciary duty by abuse of control' as duplicative and unrecognized as a separate tort under California law. The court agrees."); *see also In re MRV Commc'ns, Inc. Derivative Litig.*, No. CV 08-03800, 2010 WL 5313442, at *13 (C.D. Cal. Dec. 27, 2010) (quoting *In re Citigroup Inc. S'holder Derivative Litig.*, 964 A.2d 106, 115 n.6 (Del. Ch. 2009) ("Delaware law . . . 'does not recognize an independent cause of action against corporate directors and officers for reckless and gross management; such claims are treated as claims for breach of fiduciary duty.'")).

(8)  Corporate Waste – Eighth Cause of Action

"Claims of corporate waste in California are based upon Delaware state law." *Swingless Golf Club Corp. v. Taylor*, 679 F. Supp. 2d 1060, 1070 (N.D. Cal. 2009). "Delaware courts have explained that the legal test for waste is 'severe.'" *Navellier v. Sletten*, 262 F.3d 923, 937 (9th Cir. 2001) (citing *Glazer v. Zapata Corp.*, 658 A.2d 176, 183 (Del. Ch. 1993)). "Directors are guilty of corporate waste, only when they authorize an exchange that is so one sided that no business person of ordinary, sound judgment could conclude that the corporation has received adequate consideration." *Id.* (quoting *Glazer*, 658 A.2d at 183).

As the company's "Managing Director," Dkt. 1 ¶ 9, Cassidy "had a fiduciary duty to exercise good faith and diligence in the administration of the affairs of [Zetta PTE] and in the use and preservation of its property and assets," *id.* ¶ 143. Plaintiffs claim that Cassidy "wasted corporate assets by . . . misappropriating corporate funds, assets, and opportunities; using company funds and assets for personal purchases and transportation; and taking illegal kickbacks of funds from aircraft acquisitions that rightfully belonged to [Zetta PTE]." *Id.* ¶ 144. For example, "without knowledge and consent of Plaintiff[s] . . . and without the determination of the Board of Directors as a whole, . . . [Cassidy] us[ed] company funds to purchase at least three luxury automobiles in Singapore valued conservatively at between $2 million and $3 million." *Id.* ¶ 43. Plaintiffs claim that Cassidy continued to use company funds without their knowledge and consent on various occasions. *See id.* ¶¶ 41-48.

The foregoing allegations are sufficient to state a claim for corporate waste.

(9)  Unjust Enrichment – Ninth Cause of Action

Plaintiffs allege that Cassidy's breach of fiduciary duties, which unjustly conferred upon him "compensation, kickbacks and other benefits," constituted common law unjust enrichment. Dkt. 1 ¶ 150.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| | | | |
|---|---|---|---|
| Case No. | LA CV17-06648 JAK (GJSx) | Date | September 1, 2021 |
| Title | James N.H. Seagrim et al. v. Geoffery Owen Cassidy et al. | | |

However, "[i]n California there is no cause of action for unjust enrichment; it is a 'general principle, underlying various legal doctrines and remedies, rather than a remedy itself.'" *Bosinger v. Belden CDT, Inc.*, 358 F. App'x 812, 815 (9th Cir. 2009) (citing *Melchior v. New Line Prods., Inc.*, 106 Cal. App. 4th 779, 793 (2003)); *see also Exp.-Imp. Bank of the U.S. v. United Cal. Disc. Corp.*, 738 F. Supp. 2d 1047, 1060 (C.D. Cal. 2010) (aff'd, 484 F. App'x. 91 (9th Cir. 2012)) (citing *Melchior*, 106 Cal. App. 4th at 793) ("[T]here is no cause of action in California for unjust enrichment."); *Rosal v. First Fed. Bank of California*, 671 F. Supp. 2d 1111, 1133 (N.D. Cal. 2009); *but see Paracor Fin., Inc. v. Gen. Elec. Capital Corp.*, 96 F.3d 1151, 1167 (9th Cir. 1996) ("[U]njust enrichment is an action in quasi-contract.").

Because unjust enrichment is not an independent cause of action in California, Plaintiffs have not shown that this claim has merit.

            c)       The Sum of Money at Stake in the Action

Under the fourth *Eitel* factor, "the court must consider the amount of money at stake in relation to the seriousness of Defendant's conduct." *PepsiCo*, 238 F. Supp. 2d at 1176. Default judgment is discouraged when the amount of money at stake in the litigation is "too large or unreasonable in light of defendant's actions." *Truong Giang Corp. v. Twinstar Tea Corp.*, No. C 06-03594, 2007 WL 1545173, at *12 (N.D. Cal. May 29, 2007); *see also Eitel*, 782 F.2d at 1472 ($3 million judgment, considered in light of parties' dispute as to material facts, supported the decision not to enter default judgment). However, where the sum of money at stake is tailored to the specific misconduct of the defendant, default judgment may be appropriate. *See Board of Trs. of the Sheet Metal Workers Health Care Plan v. Superhall Mech., Inc.*, No. 10 2212, 2011 WL 2600898, at *2 (N.D. Cal. June, 30 2011) (the amount of unpaid contributions, liquidated damages, and attorney's fees were appropriate as each was supported by adequate evidence provided by plaintiffs).

Plaintiffs seek a judgment of $39,015,283, which includes attorney's fees and costs of litigation, as well as any punitive damages that are deemed appropriate. Dkt. 131 at 23. Plaintiffs claim that "[t]his amount is proportionate to the destruction Cassidy left in his wake: the millions of dollars he misappropriated for his personal benefit, the hundreds of millions of dollars in vastly overpriced planes that he caused the Plaintiffs to buy in exchange for kickbacks, the potentially viable business he destroyed." *Id.* at 18. Plaintiffs further claim that the amount is "also appropriate here because of Cassidy's malice and deceit, the enormity and duration of Cassidy's intentional and outrageous wrongdoing, and the need to deter him from similar fraudulent and tortious behavior in the future." *Id.*

Plaintiffs' arguments have some force. However, the large sum requested nevertheless weighs against default judgment.

            d)       The Possibility of a Dispute Concerning Material Facts

Upon entry of default, all facts pleaded in the complaint are taken as true, except those as to damages. *See TeleVideo Sys., Inc. v. Heidenthal*, 826 F.2d 915, 917-18 (9th Cir. 1987). Although it is possible that Cassidy could dispute some or all of the material facts, his failure to participate in this action shows that is unlikely. Moreover, the matters within the scope of the discovery propounded on Cassidy as to various issues were admitted in a manner adverse to him. Dkt. 126 at 4. Therefore, the fifth *Eitel* factor weighs in favor of granting the Motion.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| | | | |
|---|---|---|---|
| Case No. | LA CV17-06648 JAK (GJSx) | Date | September 1, 2021 |
| Title | James N.H. Seagrim et al. v. Geoffery Owen Cassidy et al. | | |

e) Whether Default Was Due to Excusable Neglect

The sixth *Eitel* factor considers the possibility that the default resulted from excusable neglect of the non-moving party. *See Eitel*, 782 F.2d at 1472. Excusable neglect is "an equitable concept that takes account of factors such as prejudice, the length of delay and impact on judicial proceedings, the reason for the delay, including whether it was within the reasonable control of the movant, and whether the movant acted in good faith." *Franchise Holding II, LLC v. Huntington Restaurants Group, Inc.*, 375 F.3d 922, 927 (9th Cir. 2004) (internal quotation marks omitted) (citing *TCI Grp. Life Ins. Plan v. Knoebber*, 244 F.3d 691, 696 (9th Cir. 2001)).

There has been no showing that Cassidy's failure to participate in this litigation was the result of excusable neglect. To the contrary, the Sanctions Order found that Cassidy failed to participate in discovery or any other aspect of the proceedings since the filing of the Complaint in 2017, and that he "exhibited the willfulness that justifies the imposition of" terminating sanctions. Dkt. 126 at 4. Accordingly, the sixth *Eitel* factor weighs in favor of granting the Motion.

f) The Policy Favoring Decision on the Merits

The final *Eitel* factor generally disfavors the entry of default judgment. However, "this preference is not dispositive. When a defendant fails to answer a . . . complaint, a decision on the merits is impractical, if not impossible. Therefore, the preference to decide cases on the merits does not preclude a court from granting default judgment." *United States v. One Glock 19*, No. C-0605412, 2007 WL 2438361, at *3 (N.D. Cal. Aug. 23, 2007) (citations and quotations omitted); *accord PepsiCo*, 238 F. Supp. 2d at 1177 (the preference against default judgment is not dispositive, so courts are not precluded from granting a default judgment). Further, the failure of a defendant to respond or object makes a decision on the merits impracticable if not impossible. Therefore, the final *Eitel* factor does not preclude the entry of default judgment.

\*        \*        \*

Based on a review and balancing of the *Eitel* factors, the Motion is **GRANTED** as to claims (iii), (v), (vi) and (viii), subject to a separate assessment of the requested relief.

3. Relief Sought

Under the Federal Rules of Civil Procedure, a "default judgment must not differ in kind from, or exceed in amount, what is demanded in the pleadings." Fed. R. Civ. P. 54(c). Further, the demand for relief must be specific. Fed. R. Civ. P. 8(a)(3). Therefore, "a default judgment must be supported by specific allegations as to the exact amount of damages asked for in the complaint." *Philip Morris*, 219 F.R.D. at 499. In addition, "Plaintiff must 'prove up' the amount of damages that it is claiming." *Id.* at 501. "In determining damages, a court can rely on the declarations submitted by the plaintiff or order a full evidentiary hearing." *Id.* at 498 (citing Fed. R. Civ. P. 55(b)(2)). "However, if the facts necessary to determine damages are not contained in the complaint, or are legally insufficient, they will not be established by default." *Id.*

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV17-06648 JAK (GJSx) | Date | September 1, 2021 |
|---|---|---|---|
| Title | James N.H. Seagrim et al. v. Geoffery Owen Cassidy et al. | | |

Plaintiffs seek a monetary judgment of $39,015,283 which includes: (i) compensatory damages for the amount of alleged kickbacks and commercial bribes, totaling $1,086,459; (ii) compensatory damages for the amount of funds Cassidy misappropriated, totaling $11,662,457; (iii) trebling of the two preceding sums under the RICO Act; and (iv) Plaintiffs' attorney's fees and costs in the sum of $768,535. Dkt. 131 at 19-22. The amounts requested for compensatory damages are also requested as a form of restitution. *Id.* at 23. Plaintiffs also seek an award of punitive damages deemed appropriate by the Court. *Id.* at 22-23.

                a)       Compensatory Damages

Plaintiffs' request for compensatory damages is supported by the Furler Declaration. It is also supported by the Sanction's Order. It determined that matters within the scope of discovery propounded on Cassidy were admitted in a manner adverse to him. This provides the following support for the request for compensatory damages:

(1) "Cassidy received two payments of $500,000 each from Jetcraft to Cassidy personally that were included in the price of two planes purchased by the Plaintiffs." Dkt. 131 at 20; Furler Decl., Dkt. 131-2 ¶ 8; *see* Dkt. 107-1 at 24-25 (admitting in a manner adverse to Cassidy the matters within the scope of the discovery propounded on him seeking his position and evidence as to "ANY payments or items of value . . . that [Cassidy] received from JETCRAFT").

(2) "Cassidy also received a credit worth $42,569 on an obligation that he personally owed to Fazal-Karim on June 2, 2017 relating to the yacht Nyota." Dkt. 131 at 20; Furler Decl., Dkt. 131-2 ¶ 8; *see* Dkt. 107-1 at 64 (Cassidy admitting that he "and Jahid Fazal-Karim entered into an agreement or other understanding to acquire the vessel known as the Nyota"); *see also* Dkt. 107-1 at 23 (admitting in a manner adverse to Cassidy the matters within the scope of the discovery propounded on him seeking his position and evidence as to "ALL material facts RELATED TO [Cassidy's] relationship with Jahid Fazal-Karim" and "ANY payments or items of value . . . that [Cassidy] received from Jahid Fazal-Karim").

(3) "Cassidy personally received F1 Tickets from Bombardier worth $43,890 on July 20, 2016." Dkt. 131 at 20; Furler Decl., Dkt. 131-2 ¶ 9; *see* Dkt. 107-1 at 64 (Cassidy admitting that he "received payments or items of value . . . from BOMBARDIER"); *see also* Dkt. 107-1 at 25-26 (admitting in a manner adverse to Cassidy the matters within the scope of the discovery propounded on him seeking his position and evidence as to "ALL material facts RELATING TO ANY transactions between ZETTA and BOMBARDIER" and "any payments . . . that [Cassidy] received from BOMBARDIER").

(4) "Cassidy caused the Plaintiffs to pay $3,324,105 in a series of five transactions on March 24, 2016, May 14, 2016, August 16, 2016, September 12, 2016, and December 5, 2016, to purchase the yacht Dragon Pearl in 2016." Furler Decl., Dkt. 131-2 ¶ 10; Dkt. 131 at 21; *see* Dkt. 107-1 at 26, (admitting in a manner adverse to Cassidy the matters within the scope of the discovery propounded on him seeking his position and evidence regarding "ALL material facts RELATED TO YOUR purchase, operations, sale, transfer, payroll, and insurance of the Dragon Pearl"); *see also* Dkt. 107-1 at 47 (admitting in a manner adverse to Cassidy the matters within the scope of the discovery propounded on him seeking his position and evidence as to the contents of "ALL DOCUMENTS including COMMUNICATIONS, RELATING TO ANY vehicles purchased, used, or operated by [Cassidy] or on [Cassidy's] behalf using ZETTA's funds").

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| | | | |
|---|---|---|---|
| Case No. | LA CV17-06648 JAK (GJSx) | Date | September 1, 2021 |
| Title | James N.H. Seagrim et al. v. Geoffery Owen Cassidy et al. | | |

(5) "Cassidy also caused the Plaintiffs to pay additional expenses relating to the Dragon Pearl of $427,640. Cassidy also caused the Plaintiffs to pay $84,122 for one car and $302,070 for a second car." Furler Decl., Dkt. 131-2 ¶ 10; Dkt. 131 at 21; *see* Dkt. 107-1 at 65 (Cassidy admitting that he "purchased vehicles for personal use using ZETTA's funds").

(6) "Cassidy used aircraft owned by the Plaintiffs to make trips worth $1,029,056 that were not invoiced by the Plaintiffs." Furler Decl., Dkt. 131-2 ¶ 11; Dkt. 131 at 21; *see* Dkt. 107-1 at 65 (Cassidy admitting that he "flew on ZETTA's aircraft for personal reasons unrelated to ZETTA activities").

(7) "Cassidy caused the Plaintiffs to make payments totaling $967,964 to purchase 3 Ardmore Park, Unit 20-01, Singapore 259950, make renovations to the property, and pay various other expenses relating to that property." Furler Decl., Dkt. 131-2 ¶ 12; *see* Dkt. 131 at 21; Dkt. 107-1 at 40 (admitting in a manner adverse to Cassidy the matters within the scope of the discovery propounded on him seeking his position and evidence as to the contents of "ALL DOCUMENTS, including COMMUNICATIONS, RELATED TO [Cassidy's] purchase of 3 Ardmore Park, unit #20-01 in Singapore").

(8) "Cassidy charged corporate credit cards for accommodation, overseas transport and travel, food, and entertainment without identifying appropriate business purposes in an amount totaling $455,877 and for other personal expenses in an amount totaling $404,918." Furler Decl., Dkt. 131-2 ¶ 13; Dkt. 131 at 21; *see* Dkt. 107-1 at 46-47 (admitting in a manner adverse to Cassidy the matters within the scope of the discovery propounded on him seeking his position and evidence as to the contents of "ALL DOCUMENTS supporting the fact that transactions on [Cassidy's] corporate credit card were for ZETTA-related business purposes").

(9) "Cassidy also submitted claims for reimbursement and was paid by the Plaintiffs for accommodation, overseas transport and travel, food, and entertainment without identifying appropriate business purposes in an amount totaling $805,481 and for personal expenses totaling $101,211." Furler Decl., Dkt. 131-2 ¶ 14; Dkt. 131 at 21.

(10) "Cassidy caused the Plaintiffs to pay $93,347 for his personal income taxes." Furler Decl., Dkt. 131-2 ¶ 15; Dkt. 131 at 21; *see* Dkt. 107-1 at 26 (admitting in a manner adverse to Cassidy the matters within the scope of the discovery propounded on him seeking his position and evidence regarding "ALL material facts RELATED TO YOUR purchase, operations, sale, transfer, payroll, and insurance of the Dragon Pearl").

(11) "Cassidy caused the Plaintiffs to transfer $3,666,666 from the Plaintiffs' HSBC bank account to Cassidy's personal bank account on or about September 22, 2016." Furler Decl., Dkt. 131-2 ¶ 16; *see* Dkt. 107-1 at 47 (admitting in a manner adverse to Cassidy the matters within the scope of the discovery propounded on him seeking his position and evidence as to the contents of "ALL DOCUMENTS, including COMMUNICATIONS, related to a payment of $3,666,666 to [Cassidy] on September 22, 2016 . . . at HSBC Singapore").

These amounts total $12,748,916 in "wrongfully retained illicit proceeds, including kickbacks, commercial bribes, and direct and indirect benefits." Dkt. 131 at 23.[3]

        b)    Treble Damages

---

[3] The calculation is as follows: $500,000 + $500,000 + $42,569 + $43,890 + $3,324,105 + $427,640 + $84,122 + $302,070 + $1,029,056 + $967,964 + $455,877 + $404,918 + $805,481 + $101,211 + $93,347 + 3,666,666 = $12,748,916.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| | | | |
|---|---|---|---|
| Case No. | LA CV17-06648 JAK (GJSx) | Date | September 1, 2021 |
| Title | James N.H. Seagrim et al. v. Geoffery Owen Cassidy et al. | | |

#

Plaintiffs seek treble damages under the RICO Act. 18 U.S.C. § 1964(c) ("Any person injured in his business or property by reason of a violation of section 1962 . . . may sue . . . and shall recover threefold the damages he sustains . . . ."). Since Plaintiffs have not sufficiently alleged their RICO claim, they are not entitled to treble damages.

        c)        Restitution

Plaintiffs seek "[r]estitution in the form of disgorgement of all illicit proceeds generated as a result of Cassidy's alleged conduct." Dkt. 131 at 23. Specifically, Plaintiffs claim that restitution is appropriate because "Cassidy has wrongfully retained illicit proceeds, including the kickbacks, commercial bribes, and direct and indirect benefits . . . in the amount of $12,748,916." *Id.* (citing King Decl. ¶¶ 15, 24). The amount requested has already been discussed and awarded in the form of compensatory damages. Thus, an award of these damages in the form of restitution would be duplicative and is inappropriate.

        d)        Attorney's Fees and Costs

Reasonable attorney's fees may be recovered for violations of the RICO Act pursuant to 18 U.S.C. § 1964(c)., Local Rule 55-3 sets forth a schedule for awarding attorney's fees where they are recoverable under a statute.

Plaintiffs seek an award of $768,535 in attorney's fees under 18 U.S.C. § 1964(c) and in accordance with the schedule set forth by L.R. 55-3. Dkt. 131 at 22. However, because Plaintiffs have not sufficiently alleged a violation of the RICO Act, no fee award is warranted under U.S.C. § 1964(c). Plaintiffs provide no other argument or evidence to support an award of attorney's fees. Accordingly, the request for a fee award is **DENIED**.

        e)        Punitive Damages

Plaintiffs seek the award of punitive damages based on "Cassidy's malice and deceit, . . . the enormity and duration of Cassidy's intentional and outrageous wrongdoing, and . . . the need to deter him from similar fraudulent and tortious behavior in the future." Dkt. 131 at 22-23.

Cal. Civ. Code § 3294(a) provides that punitive damages may be awarded "where it is proven by clear and convincing evidence that the defendant has been guilty of oppression, fraud, or malice . . . ." Plaintiffs have made some showings in support of the claim for punitive damages. However, in light of the amount of the award of general damages, and that the request for punitive damages is made in a default proceeding, it is determined that such an award is not presently warranted in this action.

**V.     Conclusion**

For the reasons stated in this Order, the Motion is **GRANTED-IN-PART**. A judgment of $12,748,916 shall be entered in favor of Plaintiffs and against Cassidy.

Plaintiffs shall submit a proposed Judgment within 10 days of the entry of this Order.

#

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| | | | |
|---|---|---|---|
| Case No. | LA CV17-06648 JAK (GJSx) | Date | September 1, 2021 |
| Title | James N.H. Seagrim et al. v. Geoffery Owen Cassidy et al. | | |

**IT IS SO ORDERED.**

                                                                                                                                                                         :

Initials of Preparer    TJ